Commonwealth *v.* Senk, Appellant.

Argued June 5, 1963. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gailey C. Keller*, with him *Hervey B. Smith*, for
appellant.

*Nicholas Piazza,* Assistant District Attorney, with him *Howard R. Berninger,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1963:

The appellant-defendant, Frank Earl Senk, was tried and found guilty, by a jury, of murder in the first degree. The punishment was fixed at death. Motions for a new trial and in arrest of judgment were dismissed, and sentence imposed in accordance with the jury's verdict. From the judgment, the present appeal was filed.

### Motion in Arrest of Judgment

In order to sustain the defendant's conviction, it is elementary that the record must contain sufficient evidentiary proof to establish his guilt beyond a reasonable doubt: *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A. 2d 441 (1959) ; *Commonwealth v. Clinton,* 391 Pa. 212, 137 A. 2d 463 (1958). However, since the jury's verdict resolved all disputed facts in connection with the defendant's guilt in favor of the Commonwealth, in determining the question of the sufficiency of the evidence, the Commonwealth must be given the benefit of all of the favorable trial testimony and every reasonable inference arising therefrom: *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A. 2d 421 (1962) ; *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963). Read in this light, the record discloses the following:

Jane Mary Benfield, aged thirteen years, departed from her home in the town of Centralia, Columbia County, Pennsylvania, sometime after ten o'clock on the morning of July 11, 1961, to visit the home of a family friend, located a few blocks away. Several minutes later, she was seen a short distance from her home entering a Pontiac station wagon operated by an un-

identified man, after giving directions to the driver. The automobile then proceeded to travel in the direction of the town of Aristes, located nearby. She did not return home again. On the following day, July 12th, about 7:00 o'clock p.m., her dead body was found by searchers in a wooded, abandoned mining area, approximately one-quarter of a mile east of the state highway leading from Centralia to Aristes. An autopsy disclosed evidence of a severe blow to the head resulting in a fracture of the skull; also strangulation through violence. Abrasions were present near the anus and on the left portion of the hymen. The body, when found, was almost completely nude, whatever little clothing remained was in complete disarray. The death was caused either by the skull fracture or suffocation. A medical expert, who assisted with the postmortem, fixed the time of death at approximately 11 a.m. on July 11th.

The defendant, when arrested, maintained a home in Williamsport, Lycoming County, Pennsylvania. He was a magazine salesman and traveled extensively in carrying out his trade. During the period, when this killing occurred, he was working in Centralia and surrounding communities. He had temporarily rented an apartment in Ashland, Pennsylvania, which he gave up on July 13, 1961. He made calls on prospects in this area to sell magazines on July 10th and 12th, but none such were made on July 11th, although he had previous commitments to do so. In his employment, he operated and was in possession of a rented Pontiac station wagon. This specific automobile was identified as the same make and model as the one the victim entered near her home on the day of her disappearance. On the morning of July 11th, a short time before the victim was seen entering a Pontiac station wagon, the defendant had stopped his station wagon on a street in the town of Ashland, asked directions of two young

girls and offered to drive them to their homes, which invitation they refused. Ashland is approximately one mile from Centralia.

On January 18, 1962, the defendant was taken into custody by officers of the Pennsylvania State Police. On the early morning of January twenty-first, he disclosed that Jane Mary Benfield had accepted an invitation to ride with him in his station wagon on July 11, 1961, and that he had killed her when she resisted an indecent assault upon her. His statements, relating the details of the crime were reduced to writing by the police, which the defendant signed. Later that same day, he directed the police to the scene of the killing and re-enacted the details thereof. On the same day, he was arraigned before a justice of the peace and charged with murder. Twenty-four hours later, after signing a petition asking court to appoint counsel to represent him, he again visited the murder scene with the police and described in detail the events of the unfortunate killing. At trial, the defendant did not personally testify or offer any testimony in contradiction of the evidence offered against him.[1]

It is readily manifest that all of the necessary ingredients of murder in the first degree were adequately established. The motion in arrest of judgment was, therefore, properly overruled and need not detain us.

## New Trial

The basic assignments of error in this regard concern the admission at trial of the defendant's confession. It is argued that the prejudicial statements given by the defendant were coerced, not voluntarily given, and hence should not have been admitted in evidence

---

[1] The defendant did testify at a hearing held by the trial court, in the absence of the jury, to preliminarily determine if the confession was voluntary and conditionally admissible.

against him. It is urged that the defendant was wrongfully detained for a long period of time before formal arrest and arraignment, and that during this period he was subjected to long and unreasonable questioning.

A close study of all of the evidence convinces us that the admissions of the defendant were freely given under circumstances which negate a conclusion that they were the result of coercion or oppressive tactics. His statements against interest, therefore, could not be rejected as a matter of law.

If a confession is freely given, it is properly admitted to prove the guilt of the accused: *Commonwealth v. Dickerson,* supra, and *Rogers v. Richmond,* 365 U.S. 534 (1961). In determining whether or not an accused's statements were voluntary, that is the free and unconstrained choice of the maker, the totality of the circumstances under which they were made must be considered: *Commonwealth v. Graham,* 408 Pa. 155, 182 A. 2d 727 (1962); *Leyra v. Denno,* 347 U.S. 556 (1954); *Fikes v. Alabama,* 352 U.S. 191 (1957); and *Culombe v. Connecticut,* 367 U.S. 568 (1961).

The mere questioning of a suspect, while in police custody, is not prohibited either as a matter of common law or due process: *Lisenba v. California,* 314 U.S. 219 (1941). Nor does the fact that an accused is questioned by the police for a considerable period of time after being taken into custody, in itself, establish the existence of coercion, and thus destroy the admissibility of a confession: *Commonwealth v. Agoston,* 364 Pa. 464, 72 A. 2d 575 (1950); *Commonwealth v. Graham,* supra; *Lyons v. Oklahoma,* 322 U.S. 596 (1944); *Stein v. New York,* 346 U.S. 156 (1953); and, *Crooker v. California,* 357 U.S. 433 (1958). For a confession to be coerced and thus inadmissible, there must be an impairing or overpowering of the will; it must be one that is not the product of a rational intellect and a free will.

*Commonwealth v. Graham,* supra; *Rogers v. Richmond,* supra; *Reck v. Pate,* 367 U.S. 433 (1961).

In the instant case, the defendant was taken into custody in western Pennsylvania about 9:15 o'clock p.m. on January 18, 1962, while in the company of his wife. He was taken to the nearby State Police Headquarters in Warren, Pennsylvania. His wife followed him there and had a conversation with him. Later on, he was transferred to the State Police Headquarters in Ridgway, Pennsylvania. On January 21st, about 1:30 o'clock a.m., he first disclosed to the investigating officers that he was guilty of the crime. Soon afterward, his statements were reduced to writing, a copy of which was given to the defendant to read, corrections made at his request, and then signed and witnessed.

During his confinement, the defendant was questioned for several hours and at various times. Under all of the circumstances disclosed by the record, this was not necessarily in itself unreasonable or too prolonged. There was no overpowering of the will. He was fed regularly and given reasonable opportunities to rest and sleep. Toilet and similar facilities were available at all times. No objections were voiced during his confinement as to his treatment. On January 20th, at his request, he was given the opportunity of talking privately with a minister for extended periods of time. On the same day, he was visited by his mother and wife, who consulted with him in the absence of police officers. It *was subsequent* to these occurrences that he evidenced a desire and willingness to clear his conscience and tell of his involvement. At the time, he was calm and composed. Under all of these circumstances, whether or not his statements were freely given was for the jury to determine. See, *Commonwealth v. Ross,* 403 Pa. 358, 169 A. 2d 780 (1961), and *Commonwealth v. Graham,* supra. That the jury was carefully and thoroughly instructed on this phase of

its inquiry is not questioned. Implicit in the verdict of the jury is the conclusion that they were unanimously convinced that the confession was freely given. Of course, the defendant now accuses the police of brutality and other atrocities, but one would be hard put to believe these assertions in view of the strong testimony to the contrary. In this connection, also, it must be significantly noted that the defendant is a mature person, a high school graduate possessing an unusually high I.Q., and one who is no stranger to police techniques and custodial procedures.

The defendant further contends that before the confession was given, he was not advised of his constitutional rights to remain silent, and to be represented by counsel. The first assertion is completely refuted by the written confession itself, wherein it is stated "that anything you say may be used against you in court." In addition and more importantly other credible testimony reveals that the defendant was fully aware of his rights. Considering defendant's background, one would be naive to believe otherwise. The fact that the defendant was unrepresented by counsel at the time the confession was given does not in itself invalidate it: *Commonwealth v. Ballem,* 386 Pa. 20, 123 A. 2d 728 (1956), and *Commonwealth v. Graham,* supra; *Cicenia v. LaGay,* 357 U.S. 504 (1958). Nor does the fact that he may not have been advised of his right to have counsel before discussing the crime with the police constitute lack of due process: *Crooker v. California,* supra; *Cicenia v. LaGay,* supra.

Defense counsel's argument that in determining the voluntariness of the confession, the trial court applied the apparent truthful test, is not borne out by the record. No such instruction was given to the jury or was even intimated. To the contrary, the jury was specifically instructed that in determining the voluntariness of the confession, its probable truth or falsity

could not be considered. This instruction was in keeping with the law as enunciated in *Rogers v. Richmond,* supra, and *Commonwealth v. Vento,* 410 Pa. 350, 189 A. 2d 161 (1963).

The defendant's complaint that there was an undue delay in the formal arrest and arraignment is devoid of merit. These were circumstances to be considered by the jury in determining the admissibility of his confession, but did not in themselves impinge upon his constitutional rights: *Commonwealth v. Agoston,* supra; *Commonwealth ex rel. Butler v. Banmiller,* 398 Pa. 442, 159 A. 2d 212 (1960).

The defendant urges that the testimony of certain witnesses should not have been admitted, because their identity had not been disclosed to his counsel before trial. It appears that a motion for a bill of particulars was filed prior to trial, wherein defendant's counsel sought to ascertain the names and addresses of Commonwealth witnesses. While termed a bill of particulars, this pleading in truth was a petition for discovery. There is no basis in Pennsylvania law for such a request except where exceptional circumstances and compelling reasons exist: *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955); and *Commonwealth v. Caplan,* 411 Pa. 563, 192 A. 2d 894 (1963). Such are not present here. Moreover, the record evidences that the Commonwealth was more than fair in disclosing and making available to defense counsel before trial, substantial portions of its evidence.

Finally, the defendant asserts that the court erred in refusing to withdraw a juror when two witnesses made references in their testimony to facts indicating that the defendant had previously been in prison in the State of Florida, and had been guilty of unnatural sex relations. These irrelevant and incompetent statements were stricken from the record by the trial judge, and the jury emphatically instructed to disregard them.

Under all of the attending circumstances, the situation is not such as to require a new trial. We are of the opinion that no prejudice resulted and that the objectionable testimony had no influential effect. See, *Commonwealth v. Fugmann,* 330 Pa. 4, 198 A. 99 (1938).

We have carefully read and reread the trial record. Every assignment of error has been carefully considered. We are completely satisfied that the defendant received a fair trial. The trial judge carefully protected his rights in every respect. His guilt or innocence was for the jury to determine. The record supports its conclusion. His post trial complaints have no legal merit.

Judgment affirmed.

Mr. Justice COHEN dissents.