**UNITED STATES of America ex rel. Murray DICKERSON**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania, Appellant.**

No. 15316.

United States Court of Appeals Third Circuit.

Argued June 15, 1965.

Decided July 19, 1966.

Rehearing Denied Aug. 15, 1966.

Stanley M. Shingles, Asst. Dist. Atty., Philadelphia, Pa. (Joseph M. Smith, Asst. Dist. Atty., Chief, Appeals Div., F. Emmitt Fitzpatrick, Jr., First Asst. Dist. Atty., James C. Crumlish, Jr., Dist. Atty., Philadelphia, Pa., on the brief), for appellant.

Walter Stein, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, STALEY and GANEY, Circuit Judges.

## OPINION BY THE COURT

GANEY, Circuit Judge.

This case involves an appeal by the Superintendent of the State Correctional Institution, Philadelphia, Pennsylvania, dated February 9, 1965, granting the appellee's, Murray Dickerson, petition for writ of habeas corpus.[1]

The district court, in its opinion, stated that it was granting the writ "because the relator was denied the assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States when a statement elicited from him at a 'critical stage' of the proceedings was admitted into evidence against him at his trial." 238 F.Supp. 218, 219 (E.D.Pa.1965). Appellant claims that the district court erred in allowing the writ because, assertedly, the incriminating statement made by the accused is not rendered inadmissible solely by the fact that he was unrepresented by counsel at that time.

The fact background is as follows: On August 15, 1958, at about 11:15 p.m., a guard at a housing project in Philadelphia was discovered dead in the incinerator room of the project, having been shot four times. Four days later, on August 19, the police arrested one Spencer Broaddus, who gave a statement admit-

ting his part in the killing and implicating the appellee, Dickerson. On the same day Dickerson, upon learning that the police were looking for him, surrendered himself. They asked him where he was on the night of August 15. When he admitted being near the scene of the crime with someone else, the police placed him under arrest on the charge of homicide. They then took him to City Hall for further questioning. Before doing so, the police did not warn Dickerson that he had the right to remain silent, nor did they inform him that he had the right to consult with a lawyer and to have the lawyer with him during the interrogation. In response to questions Dickerson at first denied any part in the crime. But when he was confronted with the statement given by Broaddus, he changed his story. He then admitted what Broaddus had stated was true, with the exception that he had not seen Broaddus shoot the guard, and signed a statement to that effect.

On the morning of August 20, he was given a preliminary hearing before a magistrate who ruled that Dickerson be held for action by the grand jury and then committed him to the County Prison pending that action.[2] That afternoon while Dickerson was in jail the district attorney of Philadelphia County obtained a "bring-up" order signed by a Quarter Sessions Judge commanding the keeper of the jail to deliver both Dickerson and Broaddus over to the police for further questioning. The two of them were taken to police headquarters where they were interrogated in private, resulting in Broaddus giving a second statement wherein he admitted, in addition to shooting the guard, taking seven dollars from his wallet and some bullets from his gunbelt. Both Dickerson and

---

1. The order provided that "issuance of the writ is stayed for 60 days pending a decision by the District Attorney to either appeal this Order to the Court of Appeals or to retry the petitioner on the next available trial list."

2. Article I, § 14 of the Pennsylvania Constitution, P.S., provides: "All prisoners

shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great; * * *." See Commonwealth ex rel. Alberti v. Boyle, 412 Pa. 398, 195 A.2d 97 (1963). The record does not show whether Murray Dickerson applied for bail.

Broaddus signed the statement. Dickerson then gave a second statement and signed it, wherein he stated that he was present in and about the place where the shooting occurred, that after the guard was shot he took a blackjack from his pocket and later sold it to a bartender for $1.25. Thereafter Dickerson and Broaddus were returned to the County Prison.

On September 18, 1958, Dickerson and Broaddus were indicted for murder. On April 18, 1960, after Broaddus had earlier pled guilty to murder generally, Dickerson pled not guilty to that indictment. On the same day he went to trial. The two statements given by Dickerson and the two by Broaddus were introduced into evidence by the prosecution at Dickerson's trial. He objected to their admission and vigorously raised the question of the voluntariness of those statements. He testified that he had been harshly treated in that he was pummeled by detectives on a number of occasions, as well as being generally pushed around, and that he wanted to telephone his people or a lawyer, but the police would not let him, and that, on the whole, the statements which he had given by way of confession were the result of coercion and not voluntary on his part. Nevertheless, the statements were admitted into evidence.

His conviction and sentence was affirmed on appeal by the Supreme Court of Pennsylvania. Commonwealth v. Dickerson, 406 Pa. 102, 176 A.2d 421 (January 2, 1962). In that case, the Court held that the police could question Dickerson, who could have elected to cooperate or refuse to do so, after the preliminary hearing in the confines of the prison "and the fact that they saw fit to remove him from the prison for this purpose did not result in any prejudice," [3] and that the trial court had properly submitted the statements to the jury on the question of voluntariness. Thereafter, Dickerson filed a petition for a writ of habeas corpus in the Common Pleas Court of Philadelphia. The denial of that petition was affirmed on appeal. Commonwealth ex rel. Dickerson v. Rundle, 411 Pa. 651, 192 A.2d 347 (1963), cert. denied 375 U.S. 915, 84 S.Ct. 214, 11 L.Ed.2d 154. There the Court said, in affirming, "An examination of the record discloses that each and every reason included in the present petition for release from confinement was alleged and set forth as an assignment of error in the appeal presented to this Court from the judgment of sentence." Thereafter, he filed the petition here involved in the district court.

In connection with the appellant's contention, in its opinion the district court said: "However, we find that the relator [Dickerson] was deprived of due process when he was summarily taken from the County Prison and turned over to the police for further questioning. He was entitled to the advice of counsel at this 'critical stage' of the proceeding.[3] The pretrial proceedings had sharply shifted from the 'investigatory' to the 'accusatory' and the accused was seriously prejudiced by what transpired." [4] And further: "An incriminating statement obtained under the circumstances of this case could not constitutionally be used by the prosecution as evidence against Dickerson at his trial. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Escobedo v. State of Illinois, supra [378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)], 378 U.S. pp. 484, 485, 486, 84 S.Ct. 1758." By this passage we understand the district court to mean that this is so, even though such statement was voluntarily given.

█ If Dickerson had been tried after June 13, 1966, the date Miranda v.

---

3. In this connection, also see Commonwealth v. Senk, 412 Pa. 184, 194 A.2d 221 (1963).

4. Footnote 3 to the district court's opinion cites two cases: Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 was handed down, or perhaps even after June 22, 1964, the date Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 was decided, the statements made by him on August 19 and 20, 1958, would have been inadmissible at that trial. However, the conviction assailed here in this collateral proceeding was obtained at a trial completed long before *Miranda,* supra, and *Escobedo,* supra, were rendered, "and the rulings in those cases are therefore inapplicable to the present proceeding." Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (decided June 20, 1966). Despite the holding in the Johnson case, some other rulings, although encompassed by *Escobedo* and *Miranda,* are still available to those whose trials have been completed prior to the date of those decisions. See Johnson v. State of New Jersey, supra, 384 U.S. 719, 86 S.Ct. 1772. However, in the last cited case, Chief Justice Warren said: " * * * We have pointed out above that past decisions treated the failure to warn accused persons of their rights, or the failure to grant them access to outside assistance, as factors tending to prove the involuntariness of the resulting confession. See Haynes v. State of Washington, supra [373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)]; Spano v. People of State of New York, supra [360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959)]. Prior to *Escobedo* and *Miranda,* however, we had expressly declined to condemn an entire process of in-custody interrogation solely because of such conduct by the police. See Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Cicenia v. LaGay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). Law enforcement agencies fairly relied on these prior cases, now no longer binding, in obtaining incriminating statements during the intervening years preceding *Escobedo* and *Miranda* * * *." It is hard to say in the face of *Escobedo*

and *Miranda* that Dickerson's second statement was not taken during a "critical stage" of the proceedings. Even if we assume, contrary to the pronouncement of the higest court in Pennsylvania,[5] that the preliminary hearing is not ordinarily a critical stage of the proceedings against the accused, nothing eventuated from this hearing prejudicial to Dickerson at his trial. The intervention of this hearing between his first and second statement was without decisive legal significance regarding the second. Consequently, as we now know, Dickerson's second statement is not rendered inadmissible merely because it was given at a time when he was without the assistance of counsel.

This conclusion does not put an end to the matter. In Johnson v. State of New Jersey, supra, 384 U.S. at 730, 86 S.Ct. at 1779, Chief Justice Warren informs us: "[O]ur case law on coerced confessions is available for persons whose trials have already been completed, providing of course that the procedural prerequisites for direct or collateral attack are met. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Prisoners may invoke a substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous through the years. See Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). That test now takes specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance. See Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 573 (1963); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed. 2d 1265 (1959). Prisoners are also entitled to present evidence anew on this aspect of the voluntariness of their confessions if a full and fair hearing has not already been afforded them. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Thus while *Escobedo* and *Miranda* provide important new

---

5. See Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 323–325, 206 A.2d 283 (1965).

safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim." Also see Davis v. North Carolina, 86 S.Ct. 1761, decided the same day as the Johnson case.

As has been adverted to heretofore in the statement of facts, the same body that found Dickerson guilty of murder in the first degree also determined the issue of the voluntariness of his statements given to the police on August 19 and 20 of 1958. This, as the district court noted, was in violation of Dickerson's constitutional privilege, as announced in Jackson v. Denno, 378 U.S. 368, 391–396, 84 S.Ct. 1774, 12 L.Ed.2d 908 (June 22, 1964), to have a state court hearing on the question of the voluntariness of his statements by a body other than the one trying his guilt or innocence. The ruling in Jackson v. Denno is to be given retroactive effect. Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed. 2d 601 (1965); Tehan v. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Johnson v. State of New Jersey, supra, 384 U.S. 719, 86 S.Ct. 1772; Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 325–331, 206 A.2d 283 (1965). Commonwealth ex rel. Shaffer v. Cavell, 419 Pa. 218, 213 A.2d 380 (1965). Dickerson has met the procedural prerequisites for a post conviction hearing based on the alleged involuntary character of his statements as required by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See Miranda v. State of Arizona, supra, 384 U.S. at 464, 86 S.Ct. at 1622, n. 33, and he is therefore entitled to a Jackson v. Denno type hearing.

Accordingly, the order of the district court granting the writ will be affirmed with the following addition: The writ will be stayed pending a decision of the District Attorney of Philadelphia to either appeal the order of this court to

the Supreme Court of the United States or to grant Murray Dickerson an evidentiary hearing on the voluntariness of his statements. If at that hearing, it is determined that all of his statements introduced into evidence at his trial held in April of 1960 were voluntary, and therefore admissible, a new trial will be unnecessary; if it is determined at that hearing that any of these statements were involuntary, Murray Dickerson is required to be given a new trial with those statements, found to be involuntary, excluded, failing which he is entitled to be released.