Commonwealth ex rel. Mount, Appellant, *v.*
Rundle.

Argued November 18, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Stephen M. Feldman,* with him *Robert E. Lenton,* for appellant.

*Leslie J. Carson, Jr.,* Assistant District Attorney, with him *Alan J. Davis,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, April 18, 1967:

George Mount entered a plea of guilty to murder generally and, after a hearing, a three-judge court unanimously found him guilty of murder in the first degree[1] and, after a hearing under the so-called "Split Verdict Act" (Act of December 1, 1959, P. L. 1621, §1, 18 P.S. §4701), the court unanimously imposed upon Mount the sentence of death. On direct appeal to this

---

[1] Mount, in the instant proceeding, does not challenge this finding.

Court, we affirmed the judgment of sentence: *Commonwealth v. Mount,* 416 Pa. 343, 205 A. 2d 924 (1965), cert. den., 381 U.S. 954, 85 S. Ct. 1815 (1965).

Six months later, Mount petitioned Court of Common Pleas No. 2 of Philadelphia County for the issuance of a writ of habeas corpus alleging that the judgment of sentence of death was illegal, void and in violation of his constitutional rights. That court dismissed, without hearing, Mount's petition and from that order Mount has appealed to this Court.

As pertinent to this appeal, the factual background may be briefly stated.[2] Frances Lieberman—a 23 year old pregnant woman—was found dead in her apartment in Philadelphia on August 29, 1963, her death being the result of thirteen stab wounds which, in the medical examiner's opinion, caused death within five minutes after infliction of the wounds. Four days later—September 2, 1963—Mount was apprehended by the police and, on that same day, he made a written statement wherein, inter alia, he admitted stabbing the victim. The next day—September 3, 1963—Mount was given a preliminary hearing at which he was held without bail for grand jury action. Three days subsequent to the preliminary hearing—September 6, 1963—the police, having by that time been furnished with certain information, obtained from findings in the criminal laboratory, which led them to believe that Mount had sexually assaulted the victim, took a second written statement from Mount in which he said that, after stabbing the victim, he went into the living room, removed his clothes preparatory to having sexual intercourse with the victim, returned to where she was lying, picked up her legs and dropped them again because he could not go through with it. This second

---

[2] A more detailed statement of the facts is set forth in *Commonwealth v. Mount,* supra, 416 Pa. pp. 344, 345.

statement further related that, thereafter, Mount went back into the living room, got dressed, took some money, took the knife out of the victim and left the premises.

On September 11, 1963, Mount was indicted for murder. He then requested the appointment of counsel and counsel were appointed.

On this appeal no challenge is made to the sufficiency of the evidence to justify the finding of murder in the first degree or to the *voluntariness* of the two confessions which Mount made. The challenge is to the sentence of death and two-fold in nature: (a) that the second confession—obtained when Mount was without counsel, had not been warned of his right to remain silent and *after* the preliminary hearing—should not have been admitted into evidence at his trial and, had it not been received in evidence, the court, in determining the appropriate sentence, could not have considered, as it did, the contents of that confession which evidenced an intent to sexually assault the victim; (b) that, even though the evidence other than that obtained through the use of the second confession might have justified the death penalty, the facts contained in the allegedly inadmissible confession did play a large factor in determining the appropriate penalty.

In passing upon the admissibility of the second confession, it must be borne in mind that the trial of Mount took place in January, 1964, almost six months prior to the ruling of the United States Supreme Court in *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964). By reason of *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966), the rulings of the United States Supreme Court in *Escobedo* and in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966) are inapplicable to cases tried prior to the date of such rulings except as to challenges to confessions which necessarily involve the voluntariness of such confessions.

Originally, Mount relied on *Escobedo*; however, in the light of *Johnson*, he has changed his position and he now contends that both *Escobedo* and *Miranda* simply extended the rulings previously made in *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202 (1959) and *Massiah v. United States*, 377 U.S. 201, 84 S. Ct. 1199 (1964) both of which vitiated confessions made in the absence of counsel.

We do not consider either *Spano* or *Massiah* presently apposite. In both *Spano* and *Massiah*,[3] the challenged confessions were made after indictments had been returned whereas in the case at bar the challenged confession was made prior to Mount's indictment. In *Spano*, the confession was attacked primarily on the ground that it was made involuntarily while voluntariness is conceded in the case at bar.

The validity of the challenged second confession must be evaluated under *pre-Escobedo* legal principles. At the time the second confession was obtained, Mount had been warned by the police that anything which he said would be used for or against him at trial but he had not been warned of his right to remain silent and of his right to have the assistance of counsel. In *Commonwealth ex rel. Mumford v. Cavell*, 423 Pa. 280, 223 A. 2d 852 (1966), this Court, speaking through Mr. Justice ROBERTS, said: "Petitioner's principal contention is that his confession was improperly admitted at his trial because it was obtained during custodial interrogation in the absence of counsel and without the police warning him of his right to remain silent. This fact, in and of itself, does not vitiate petitioner's pre-Escobedo trial. Commonwealth ex rel. Shadd v. Myers, 423 Pa. 82, 223 A. 2d 296 (1966); Commonwealth ex

---

[3] In dissent, in *Escobedo*, Mr. Justice WHITE said: "In Massiah . . . the Court held that *as of the date of the indictment* the prosecution is disentitled to secure admissions from the accused." (at p. 495). (Emphasis supplied).

rel. Wilkes v. Maroney, 423 Pa. 113, 222 A. 2d 856 (1966)." (at p. 282). During the custodial interrogation of Mount in September, 1963, he had no *absolute* right to the assistance of counsel at that stage of the proceedings. In *Crooker v. California,* 357 U.S. 433, 439, 78 S. Ct. 1287, 1292 (1958), the Court stated: "Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits . . . but also if he is deprived of counsel for any part of the pre-trial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice'." See also: *Cicenia v. LaGay,* 357 U.S. 504, 78 S. Ct. 1297 (1958); *Commonwealth ex rel. Mullenaux v. Myers,* 421 Pa. 61, 217 A. 2d 730 (1966). Proof of such prejudice, of course, would render Mount's confession inadmissible but the instant record reveals no such prejudice present.

Mount made no request for counsel until five days subsequent to his indictment at which time counsel was furnished. We recognize that this Court in *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965), following the ruling in *United States ex rel. Russo v. New Jersey,* 351 F. 2d 429 (C.A. 3, 1965), did hold that a request for counsel was unnecessary to invoke the constitutional privilege and that, in *Miranda,* supra,— presently inapplicable—the Court stated that "an individual need not make a pre-interrogation request for a lawyer" and "his failure to ask for a lawyer does not constitute a waiver." (384 U.S. 436, at p. 470). However, the law during the *pre-Escobedo* and *pre-Miranda* periods did require that the accused *request* counsel, otherwise a waiver would occur. In *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966), this Court, speaking through Mr. Justice EAGEN, said: "A close study of the opinions in these cases [*Miranda*

and *Johnson*] compels the conclusion that our original interpretation of Escobedo was correct. In other words, under Escobedo, supra, an individual is not unconstitutionally deprived of the assistance of counsel during police questioning unless he requested such assistance and was not effectively warned of his right to remain silent. We now accept this final definitive ruling of the United States Supreme Court as controlling on the question." (at p. 440). See also: *Commonwealth v. Jefferson*, 423 Pa. 541, 544, 226 A. 2d 765 (1967).

That Mount had not been warned of his right to remain silent and to have the assistance of counsel *per se* did not render the second confession inadmissible at the time of Mount's trial: *Davis v. North Carolina*, 384 U.S. 737, 86 S. Ct. 1761 (1966); *Commonwealth v. Cheeks*, 423 Pa. 67, 74, 223 A. 2d 291 (1966); *Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 89, 223 A. 2d 296 (1966).

In *Davis v. North Carolina*, supra,—decided on the same date as *Miranda*—the accused, as in the case at bar, was advised he did not have to make a statement and that any statement he made could be used for or against him at trial but was given no other warning. The Supreme Court observing that such lack of warning would be held improper under *Miranda*,[4] nevertheless, held that the judgment of sentence could not be reversed "solely on the ground that warnings were not given and waiver not shown". (at p. 740). However, the Court, noting that the failure to warn an accused of his right to counsel or to remain silent constituted a "significant factor in considering the voluntariness of statements later made," (at p. 740), did consider such factors, with other factual circumstances, and held Davis' statements were "the involuntary end product of coercive influences" and constitutionally inad-

---

[4] By reason of *Johnson*, *Miranda* did not apply to *Davis*.

missible. The teaching of *Davis* is: (a) in the *pre-Escobedo* and *pre-Miranda* periods, the failure to warn an accused of his right to remain silent or his right to counsel, standing alone, did not render inadmissible a confession; (b) however, *if* the *voluntariness* of the confession is questioned, the failure to give such appropriate warnings is a factor to be considered in evaluating the *voluntariness* of the confession. As we read *Davis,* since Mount concedes the voluntariness of his second confession, under the state of the law at the time when Mount was tried, the failure of the interrogating police officials to warn Mount of his right to remain silent and to have counsel did not preclude the reception into evidence of the confession.

Next, Mount urges that, since the second confession was made *after* his preliminary hearing and prior to his representation by counsel, he was denied his constitutional rights at a critical stage of the proceedings against him. In *United States ex rel. Dickerson v. Rundle,* 363 F. 2d 126 (C.A. 3, 1966) the Court of Appeals for the Third Circuit faced a similar problem. Dickerson first made a statement which incriminated him in a homicide;[5] thereafter, he was given a preliminary hearing; *after* the preliminary hearing, he was again interrogated and made a second statement; both statements, over objection, were introduced into evidence at his trial which took place in the *pre-Escobedo* period. The Court, noting that ". . . nothing eventuated from this [preliminary] hearing prejudicial to Dickerson at his trial", stated "[t]he intervention of this hearing between his first and second statement was without decisive legal significance regarding the second. Consequently, as we now know, Dickerson's second statement is not rendered inadmissible merely be-

---

[5] Dickerson had not been warned of his right to remain silent nor his right to counsel.

cause it was given at a time when he was without the assistance of counsel." (p. 129). In *Johnson v. New Jersey,* supra, where Johnson had been questioned both *before* and *after* his preliminary hearing, the statement which he made after the preliminary hearing was held to be admissible in evidence.

That Mount's second confession was taken after the preliminary hearing and before the indictment did not render it inadmissible. Neither *Spano* nor *Massiah,* where the statements were taken subsequent to the indictments of the accused, contraindicate our conclusion.

Unlike the preliminary hearings in *Hamilton v. Alabama,* 368 U.S. 52, 82 S. Ct. 157 (1961) and *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963), a preliminary hearing in Pennsylvania is not ordinarily a "critical stage" in a criminal proceeding and, absent any exceptional or extraordinary circumstances, the assistance of counsel at such preliminary hearing is not an absolute requirement. See: *Commonwealth ex rel. Finnie v. Russell,* 422 Pa. 313, 316, 220 A. 2d 796 (1966); *Commonwealth ex rel. Mumford v. Cavell,* supra, p. 283. The preliminary hearing afforded Mount was perfunctory in nature, no guilty plea was entered nor was anything which transpired at that hearing utilized by the Commonwealth to the prejudice of Mount. Under such circumstances, Mount's lack of counsel at the hearing was of no legal significance.

Mount now seeks to minimize that which took place at the trial stage in reference to his second confession. Represented by very able counsel whose effectiveness is not challenged and whose appointment took place three months prior to trial, Mount entered a plea of guilty generally to the charge of murder upon which he had been indicted. It is significant that, neither at the trial nor at the appellate level, has Mount ever challenged the validity of the finding by the three-judge court that he was guilty of murder in the first degree.

At trial, the Commonwealth offered into evidence both the first and the second confessions of Mount. To the admission of the first confession, Mount's counsel objected only to such parts of that confession as related to burglary, the objection being upon the ground that no corpus delicti of burglary had been established; to the second confession no objection whatsoever was made. To the introduction of both confessions there was no objection made upon the ground that the police had failed to warn Mount of his right to remain silent, or of his right to have the assistance of counsel at the time he made the statements or upon the ground that such confessions were involuntarily made as the result of coercion, physical or psychological.[6]

The failure to object to the admission of the second statement at trial forecloses Mount's right to raise such an objection in this collateral attack upon his sentence: *Commonwealth ex rel. Kern v. Maroney*, 423 Pa. 369, 372, 373, 223 A. 2d 706 (1966). The position of Mount's counsel is that it was not a part of their strategy to have the statements admitted but that they had no reason to be concerned with the admissibility of the second statement because, mistakenly, they did not construe the second confession as evidence that Mount had sexually assaulted the victim. This position, belatedly assumed, does not excuse the failure at trial stage to object to the second confession. Furthermore, the bulk of the case law upon which Mount's

---

[6] *Hamilton v. Alabama*, supra, *Spano v. New York*, supra, *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932), *Moore v. Michigan*, 355 U.S. 155, 78 S. Ct. 191 (1957) and *White v. Maryland*, supra, authorities upon which Mount now so heavily relies— were all determined prior to Mount's trial and yet Mount's counsel did not object to the admissibility of either statement on the basis of such pronouncements. If, as is now urged, these rulings preclude the admission of the second statement, why did not such rulings, at the trial stage, impel counsel to object upon such grounds?

counsel now relies to attack the validity of the second confession was available at the time of the trial; if such case law mandated the suppression of the second statement, as now contended, an objection based thereon should have been made at the time of the trial.

Mount further argues that the failure of the court to appoint counsel for him until after he had been indicted violated the statute providing for the appointment of counsel in capital cases. The Act of March 22, 1907, P. L. 31, §1, as amended (19 P.S. §784) provided: "Whenever any person, *being under indictment*, charged with murder, shall make and file with the clerk of the court of quarter sessions an affidavit, setting forth that he or she is wholly destitute of means to employ counsel and prepare for his or her defense, the judge sitting in the court of oyer and terminer, to whom such affidavit is presented, shall assign to such person counsel, not exceeding two, to represent and defend such person *at the trial of the case*." (Emphasis added). In 1961, this statute was amended by eliminating the phrases "being under indictment" and "at the trial of the case.[7] (Act of April 28, 1961, P. L. 145, §1, 19 P.S. §784). Mount now argues that, under this statute, he was entitled to court-appointed counsel either after his arrest or, at least, before the preliminary hearing rather than after being indicted.

Under the 1907 Act, as amended, supra, we have held that an accused was entitled to counsel "when he is under indictment for murder and files an affidavit that he is destitute of means to employ counsel": *Commonwealth v. Agoston*, 364 Pa. 464, 480 (footnote), 72

---

[7] Rule 318, Rules of Criminal Procedure—effective January 1, 1965—provides: "(a) In Capital Cases. (1) In all capital cases counsel shall be assigned to all defendants who are without financial resources or who are otherwise unable to employ counsel as soon as practicable after the preliminary arraignment." See also: Comment to Rule 318.

A. 2d 575 (1950), cert. den., 340 U.S. 844, 71 S. Ct. 9; *Commonwealth v. Shupp,* 365 Pa. 439, 448, 75 A. 2d 587 (1950); *Commonwealth ex rel. Johnson v. Myers,* 23 Pa. D. & C. 2d 397 (1950), aff'd 194 Pa. Superior Ct. 452, 169 A. 2d 319 (1961). In *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 198 A. 2d 565 (1964), we said: "It has long been the law in Pennsylvania that a defendant need not be provided with counsel at the time of his arrest or immediately thereafter: [citing authorities]. The act of the legislature [the 1907 statute as amended by the 1961 statute], providing for the appointment of counsel for an indigent defendant accused of murder, requires the assignment of counsel to defend such person 'at the trial of the case.'" (pp. 13, 14). The Commonwealth urges that Mount failed to file an affidavit of indigency under the statute until after the preliminary hearing; that the filing of such affidavit is a condition precedent to the appointment of counsel is clear. However, in a case of such serious import, we would hesitate to penalize Mount for a belated failure to file such affidavit particularly since he was in continuous custody of the police and jail authorities and probably unaware of the necessity of such affidavit.

As we read the Act of 1961, supra, and consider the changes effected by its provisions, our construction of the legislative intendment leads us to the view that the 1961 Act extended the authority of the court in the appointment of counsel in capital cases. Prior to that statute, the power of the court to appoint arose only *after* the accused had been indicted; under the statute the court is not so restricted and it may appoint counsel either before or after the accused has been indicted. *When* the court shall appoint is left to the sound discretion of the court. By implication, the only restriction as to the *time* of appointment is that the appointment must be made at such time as will enable the ap-

pointed counsel to fully and adequately prepare for the trial of the case. The construction placed upon the statute by Mount to the effect that the court *must* appoint counsel either after arrest or certainly not later than before the preliminary hearing lacks support in the statutory language. Moreover, in view of the fact the instant preliminary hearing was not a "critical stage" in the proceedings at which counsel was required, and, in view of Mount's eventual plea of guilty, we find no prejudice suffered by him by reason of the fact counsel were not appointed until after indictment.

Lastly, Mount contends the sentencing court erred in stating: ". . . this court rejects [Mount's] contention that the rape finding was the basis for the imposition of the death penalty. There was more than adequate evidence extraneous to the second confession to justify the three-judge court in deciding on first degree murder and the death sentence." On direct appeal, Mount argued that the court, in determining the proper penalty, considered that Mount had raped the victim, that such consideration was without evidentiary support and that the court had abused its discretion and committed an error of law in this respect. We rejected that argument in *Commonwealth v. Mount,* supra, at pp. 346, 347. The present theory of Mount is that, without the allegedly inadmissible second confession, the evidence of any sexual assault was insufficient to justify a finding of rape and that, in sentencing Mount, the court gave weight to the alleged sexual assault.

We are of the opinion that the second confession was admissible in evidence and that the statements therein made, together with all the other record facts, justified the sentencing court in determining death to be the appropriate penalty. There cannot be any doubt, however, that, even without the second confession, the record evidence fully justified both the verdict of

guilty of murder of the first degree and the death penalty. Cf. *Commonwealth ex rel. Blackshear v. Myers,* 419 Pa. 151, 154, 213 A. 2d 378 (1965).

Our examination of the record indicates that the three-judge court in fixing the penalty considered "... *all* the evidence, culpatory and exculpatory, incriminating and extenuating, including what manner of man [Mount] is and has been" (*Commonwealth v. Green,* 396 Pa. 137, 148, 151 A. 2d 241 (1959)) and that the court fully and exhaustively inquired into both the criminal act and the criminal. Upon this collateral attack, we find no reason why the Great Writ should issue.

Order affirmed.

Mr. Justice MUSMANNO and Mr. Justice COHEN dissent.