**UNITED STATES of America ex rel. Frank Earl SENK, Petitioner,**

v.

**H. E. RUSSELL, Superintendent, State Correctional Institution, Huntingdon, Pennsylvania, Respondent.**

**No. 892.**

United States District Court
M. D. Pennsylvania.

Oct. 24, 1967.

Gailey C. Keller, Hervey B. Smith, Bloomsburg, Pa., for petitioner.

Howard R. Berninger, Dist. Atty., Nickolas B. Piazza, Asst. Dist. Atty., Bloomsburg, Pa., for respondent.

## OPINION

FOLLMER, District Judge.

On April 5, 1962, petitioner, Frank Earl Senk, was convicted by a jury in Columbia County, Pennsylvania, of murder in the first degree. Sentence was fixed at death. On appeal the Pennsylvania Supreme Court affirmed the judgment. Com. v. Senk, 412 Pa. 184, 194 A.2d 221 (1963). Thereafter the United States Supreme Court granted certiorari, and on June 22, 1964, vacated the order of affirmance of the Pennsylvania Supreme Court and remanded the case to the latter court for further proceedings not inconsistent with its decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). See 378 U.S. 562, 84 S.Ct. 1774 (1964). On August 25, 1964, acting in accordance with the Supreme Court Mandate, the Pennsylvania Supreme Court remanded the record to the Columbia County Court with directions to hold a post trial hearing, consistent with the requirements of due process, to determine if in-custody incriminating statements, particularly a written confession made by Senk to investigating police officers and used against him at trial, were his voluntary acts. The trial court was further directed to file, at the conclusion of said hearing, a written report of its findings and conclusions to the Pennsylvania Supreme Court for its further consideration.

After remand, counsel for Senk appeared before and advised the trial court that following full discussion with their client he had agreed and requested that any further hearing be waived, and that the issue of the voluntariness of the incriminating statements be determined on the existing record. Counsel requested and was given the opportunity to file a written brief and present oral argument.

In due course the trial court filed an exhaustive report with the Pennsylvania Supreme Court detailing its findings as to the factual circumstances incident to the giving of the incriminating statements involved, and concluding that the evidence thereof was properly admitted

at trial, and that the issue of voluntariness was for the jury to resolve. After a study of the report in conjunction with the trial record, the Pennsylvania Supreme Court approved and affirmed the factual findings and the pertinent conclusions set forth therein, holding further that they were amply substantiated by the record, and true and correct. Commonwealth v. Senk, 423 Pa. 129, 131, 223 A.2d 97 (1966).

The Pennsylvania Supreme Court noted that the incriminating statements were made at a time when Senk was without the benefit of legal counsel, had not been offered such assistance, and before he was given adequate warning of his right to remain silent. The court concluded that the absence of effective warning of these constitutional rights did not per se render evidence of the incriminating statements inadmissible at the trial. 423 Pa. at 131–132, 223 A.2d at 99. The court further noted that this case was tried (verdict of guilty April 5, 1962) before the announcement of the United States Supreme Court ruling in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that neither case controls since they are not to be applied retroactively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Certiorari was denied by the United States Supreme Court on May 15, 1967. 387 U.S. 914, 87 S.Ct. 1694, 18 L.Ed.2d 638.

On July 7, 1967, petitioner filed a petition for writ of habeas corpus in this court. On the same day the court issued a rule on the Superintendent of the State Correctional Institution, Huntingdon, Pennsylvania, to show cause why the writ should not be granted. The court also directed that in accordance with 28 U.S.C. § 2252 notice be served on the Attorney General of the Commonwealth of Pennsylvania and the District Attorney of Columbia County. A response was filed by the District Attorney of Columbia County, and this court has been furnished with the complete court records, all of which have been carefully and minutely studied.

The allegations on which petitioner bases his contention that he is held in custody unlawfully are as follows: (a) petitioner was deprived of his right to counsel; (b) petitioner's rights against self-incrimination were violated; (c) there was introduced evidence concerning petitioner's refusal to comply with the request to take a polygraph examination or lie detector test; (d) the trial court refused petitioner's motion for a withdrawal of a juror following two separate statements by police officers in regard to petitioner's criminal record.[1]

This case involves the sadistic murder of a thirteen year old girl on July 11, 1961, near Centralia, Pennsylvania. Petitioner, while in the company of his wife, was arrested January 18, 1962, in Russell, Warren County, Pennsylvania, at approximately 9:15 P.M. He was taken to the Warren Substation of the Pennsylvania State Police. His wife still accompanied him, but at approximately 1:30 A.M., after a conversation with petitioner, he told her to return to their motel, and endorsed a check for her. Petitioner was then immediately transferred to the Pennsylvania State Police Substation at Ridgway, and interrogated intermittently from approximately 4:30 A.M. to early evening. He was then taken to the Elk County jail for the night. On January 20, 1962, he was taken back to the Ridgway State Police Substation where he voluntarily submitted to the taking of a blood test but refused to submit to a polygraph test. He then asked to see a minister. A minister was called and conferred with him for about an hour. Petitioner later complained to an officer that he believed the minister was a State Policeman and was therefore given a telephone book and told he could call any minister he desired. He did call the same

---

1. All of the questions raised here by petitioner were raised by him either before the trial court, the Supreme Court of Pennsylvania or in his former petition for writ of certiorari before the Supreme Court of the United States.

minister that had previously visited him. The minister returned and again spent an hour alone with him. He requested the minister to advise the officer in charge that he wanted to have his wife and mother brought to the substation. Arrangements were immediately made to have them transported to the substation. At approximately 1:00 A.M. on January 21, 1962, his wife and mother arrived at the substation and the minister returned for the third time. The minister and wife then were alone with petitioner for about fifteen minutes when the wife left the room and the mother joined petitioner and the minister. After a further conference with his wife and mother, petitioner said to the officer in charge, "Lieutenant, I had better tell you before I change my mind." Petitioner then related the details of the crime to the officer and told the officer that he would reduce the statement to writing. He was taken to another room for that purpose at about 2:00 A.M. on January 21. The statement was reduced to writing on a typewriter by one of the officers, a copy given to petitioner and read to him. Petitioner made several corrections and signed it.[2] He was then immediately transferred to the Columbia County jail at Bloomsburg, Pennsylvania. While there, petitioner for the first time requested the appointment of counsel, and accordingly, counsel was appointed by the court on January 22, 1962.

On the fourth day of the trial, in chambers and out of the hearing of the jury, on proper motions made, the court decided to take testimony on the voluntariness of the confession. The jury was then excused, and for a little over three days the court heard testimony. The court then reconvened the jury, the confession was admitted, and the trial continued.

In his charge to the jury, the court said, inter alia:

* * * so we now come to the very important question in this case, and that is the determination of the admissibility of alleged oral and written statements made by this defendant.

It is this aspect of the case that necessitated the taking of some testimony in the absence of the jury. Under certain recent rulings of our appellate courts, it is held that where the prosecution rests to a large degree on an alleged confession, the accused has the right to demand, if he chooses, that the Court hear the testimony relative to the manner in which the alleged confession was procured in the first instance with the jury absent, and if the indisputable evidence establishes that the confession was not voluntary or obtained by impermissible methods, then the Court, as a matter of law, must refuse to present the confession to the Jury.

The Court's action in not ruling out the alleged confession as a matter of law does not place a stamp of approval upon it; the only effect of our ruling is that the Court decided that the question of the voluntary nature of the confession and the propriety of the methods used to procure it was one of fact to be determined, under the instructions we shall give you, by the Jury and not by the Court.

A voluntary confession properly procured, of course, is a very important piece of evidence in a case, but under

2. In its second opinion, the Pennsylvania Supreme Court said in a note:

2. The record does show, that before his statements were reduced to writing, Senk was warned that anything he said would be used against him in court. It also appears that early in the questioning period one investigating officer did advise him that he need not answer any questions. While Senk testified that he requested the assistance of counsel on several occasions during the interrogation period, this was categorically denied by the police witnesses, and the trial court found his testimony in this regard too vague and indefinite to be credible. It also significantly pointed to the fact that his wife and mother who had ample opportunity to contact and secure the services of an attorney on his behalf never did so. 423 Pa. 129, 132, 223 A.2d 97, 99.

My examination of the record leads me to confirm the statements of fact and conclusions thus asserted by the Pennsylvania Supreme Court.

the present law, before you are permitted to consider the truthfulness of the defendant's alleged oral or written statements, you must first determine whether such statements were freely and voluntarily made without any inducement or any expectation of any promised benefit, or by the fear of any threatened injury. In reviewing all of the evidence of the circumstances surrounding the taking of the defendant's statements, if you find they were induced by improper methods, or if you entertain any reasonable doubt as to the voluntary character thereof, it is your duty to resolve that doubt in favor of the defendant and exclude the alleged oral and written statements from your consideration in their entirety. This same test likewise applies to the two alleged reenactments of the crime by the defendant.

Confessions properly procured are received against the part (sic) making them on the theory that they are declarations against interest, and therefore, they carry with them some guarantee of truth as a person would not ordinarily make a detrimental statement against his own interests unless it was probably true.

You must find the confession to be the product of an essentially free and unconstrained choice by its maker before it may be used against him. If it appears that the confessor's will has been overborne, and his capacity for self-determination critically impaired by the officers' conduct, the use of the confession offends the due process clause of the Fourteenth Amendment to the U. S. Constitution.

Even properly procured, written and oral statements admitting guilt should be received with due care and caution, not only because of the danger of a mistake when it is orally made, or by reason of a misunderstanding of the witness to whom it was made, but for the further reason that the mind of the accused under the stress of an accusation of a crime is subject to varying hopes, or motives of hope and fear which may tend to induce an untrue confession.

Under our law in Pennsylvania, if the facts concerning the events leading up to the confession are beyond dispute, the admissibility of a confession becomes a question of law for the Court's summary disposition. However, if the facts concerning the events leading to the confession are in dispute, and the question of whether the particular confession is less than voluntary depends upon issues of fact which are for the Jury to resolve.

The question whether a confession is admissible cannot be determined by a legal standard which takes into account the circumstances of probable truth or falsity of the confession. The test that must be used is whether the behavior of the law enforcement officers was such as to overbear the confessor's will to resist and bring about a confession not freely self-determined, and this question is to be answered with complete disregard of the truth or falsity of the defendant's statement.

Aside from the legal attempts to define 'voluntary' as applied to confessions, the word 'voluntarily' as commonly used and defined in Webster's New International Dictionary, Second Edition, has divergent meanings as applied to your present problem. For example, 'voluntarily' means intended, purposed, not accidental. It also means unimpelled by another's influence.

The law of Pennsylvania permits the detention and interrogation of one suspected of crime by law enforcement officers, and neither cross-questioning, undue delay in arraignment, failure to caution a prisoner or refusal to permit communication with friends, relatives and legal counsel will, standing alone, necessitate the rejection of a confession obtained by the officers; but each of these factors, in company with all the surrounding circumstances including, but not confined to, the duration of the detention, the manifest attitude of the police toward the accused, the

sex, the age, the disposition, the education, the previous training, the mental qualities, the physical health of the accused and all of the diverse pressures which sap or sustain his powers of resistance and self-control must all be considered.

The ultimate test is whether the confession is the product of an essentially free and unconstrained choice by its maker. The line of distinction between voluntary and involuntary is that at which governing self-discretion is lost and compulsion of whatever nature, or however imposed, propels the confession.

Therefore, your first duty regarding the alleged oral and written statements is to determine the issue of the voluntariness of the same. If you conclude the statements were involuntary or procured by impermissible methods, you end your consideration of them and disregard them in their entirety. If you conclude the statements were given voluntarily and procured by permissible methods, then you pass to the determination of the trustworthiness of those statements. If you conclude they are worthy of credit and belief and truthfulness, you may then use them all, none, or any part, along with all of the other evidence in passing upon the guilt or innocence of the defendant.[3] Vol. VI at 1414–1418.

Following the submission by the trial court of its report detailing its findings relative to the confession, the Pennsylvania Supreme Court said, inter alia:

Therefore, it is our conclusion that the determinative issue herein on the admissibility of the evidence under discussion is this: In the light of all the circumstances disclosed by the record, particularly the absence of counsel during the interrogation and the failure of the investigating officers to effectively warn Senk of his constitutional right to remain silent and to have the

assistance of counsel during the questioning, is it necessary to find, as a matter of law, that his statements to the police were those of a coerced and overborne individual? It is our conclusion, after a careful consideration of all the facts, that the question of whether the statements were free and voluntary or coerced was for the jury to resolve, and that the requirements of Jackson v. Denno, supra, have been met by the independent determination of the trial court, after the verdict, that the above mentioned statements of the defendant were in fact free and voluntary. 423 Pa. at 133, 223 A.2d at 99.

I agree with the conclusion of the Pennsylvania Supreme Court and I am convinced that in the making of this confession this petitioner's will was not overborne and that it was the product of a rational intellect and a free will. A few of the many facts which were considered relevant in reaching this decision are given below.

In its first opinion, the Pennsylvania Supreme Court said:

* * * In this connection, also, it must be significantly noted that the defendant is a mature person, a high school graduate possessing an unusually high I.Q., and one who is no stranger to police techniques and custodial procedures. 412 Pa. 184, 192, 194 A.2d 221, 225. (1963).

Lieutenant Stanton, on cross-examination by counsel for petitioner, testified as follows:

Q: Did you at anytime advise Frank of his constitutional rights?

A: We had a conversation about his rights.

Q: When was that?

A: On January 19th.

Q: What did you say?

A: He made the suggestion; he said that he was well aware of his

---

3. This portion of the court's charge is quoted in full to show the extent to which the court went to comply with the formula set down in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

rights, and that he had been involved with the police many times, and that he went through two or three court trials. Vol. III at 659.

Petitioner conversed at length on three different occasions with a minister and on several occasions with his wife and mother, both separately and together. At no time did he ever suggest the thought of having an attorney appointed for him. As above stated, he first made this request on January 22, 1962, after he signed the confession.

In the Miranda case, Mr. Chief Justice Warren quotes (384 U.S. 436, 462, 86 S.Ct. 1602, 1621, 16 L.Ed.2d 694 (1966)) a statement of Justice Brandeis in Wan v. United States, as follows:

'* * * A confession is voluntary in law if, and only if, it was, in fact, voluntarily made. A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them. * * *' 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131 (1924).

In Commonwealth v. Bolger, 229 Pa. 597, 601, 79 A. 113 (1911), the court said:

There is no law, natural, civil or moral, which forbids to a criminal the right to divulge his guilty secret, and thus perhaps best begin the work of his own reformation. * * *

Petitioner was represented by thoroughly competent, alert and aggressive counsel. He received a. meticulously fair trial before a judge who throughout was obviously at all times concerned that he should have a fair trial free of error. This case has been before the Supreme Court of Pennsylvania and the United States Supreme Court twice. I am completely convinced that the confession was made freely and voluntarily and I agree with Judge Kreisher's conclusion that:

* * * From all of the surrounding circumstances, we are satisfied the defendant was well acquainted with his rights, that he knew full well what he was doing, and after talking his predicament over with his mother, wife, and minister, he decided to unburden his conscience and confess his guilt. * * * Report of trial judge to Pennsylvania Supreme Court at p. 20.

■ I have carefully scrutinized the entire state court record and conclude that the factual determinations of the state court are fairly supported by the record. After considering the charge of the court with relation to the duty of the jury to determine the voluntariness of the confession, it is to me crystal clear that their conclusion that the confession was voluntarily given is implicit in its verdict of guilty. Petitioner was given a full and fair hearing on the voluntariness of the confession by the state court which was followed by reliable findings. I accept the facts as so found and conclude that no further hearing is necessary. Towsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ Petitioner asserts that the court erred in refusing to withdraw a juror when two witnesses made reference to his criminal record. These statements were stricken from the record by the trial judge and the jury instructed to disregard them. I agree with the Pennsylvania Supreme Court that no prejudice resulted and that the testimony had no influential effect. I feel the same with regard to the complained of evidence relating to petitioner's refusal to comply with the request to take a polygraph examination.

The petition for writ of habeas corpus will be denied.