**UNITED STATES of America ex rel. Murray DICKERSON**

**v.**

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania.**

**Misc. No. M-2902.**

United States District Court
E. D. Pennsylvania.

Feb. 9, 1965.

---

Walter Stein, Philadelphia, Pa., for relator.

John F. Hassett, F. Emmett Fitzpatrick, Jr., Joseph M. Smith, James C. Crumlish, Jr., Philadelphia, Pa., for respondent.

WOOD, District Judge.

The relator is presently serving a state imposed life sentence for murder in the first degree. Com. v. Dickerson, 406 Pa. 102, 176 A.2d 421 (1961) He has exhausted his state remedies of habeas corpus. Com. ex rel. Dickerson v. Rundle, 411 Pa. 651, 192 A.2d 347 (1963) He now seeks relief from this Court. We grant the Writ because the relator was denied the assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States when a statement elicited from him at a "critical stage" of the proceedings was admitted into evidence against him at his trial.

On August 15, 1958, a guard in a housing project was found dead in the incinerator room of the project. He had been shot four times. On August 19, 1958, the relator voluntarily surrendered himself to the police. He was questioned and at first denied any part in the killing. The relator was then confronted with a statement given by Spencer Broaddus who admitted his participation in the crime and implicated Dickerson.

Thereupon, the relator changed his story and gave the police a written statement admitting that he had hit the guard, but denied that he saw the shooting. Following this statement the relator was given a preliminary hearing on the morning of August 20, 1958, before a magistrate and held for trial. The record affirmatively shows that the relator was never advised of his right to an attorney nor was he so represented at the preliminary hearing.[1] The Pennsylvania Supreme Court does not regard the preliminary hearing as a "critical stage" of the criminal proceedings against the accused. Com. ex rel. Butler v. Rundle, 416 Pa. 321, 206 A.2d 283 (1965); Com. ex rel. Herge v. Rundle, 415 Pa. 36, 202 A.2d 24 (1964); Com. ex rel. Maisenhelder v. Rundle, 414 Pa. 11, 198 A.2d 565 (1964) Thus, the lack of counsel at such a hearing does not result in a denial of due process. Com. ex rel. Linde v. Maroney, 416 Pa. 331, 206 A.2d 288 (1965).

---

1. The trial record discloses the uncontradicted testimony of Dickerson that he requested permission of the police to make a phone call to his family or a lawyer which was denied. (n.t. 298a, 299a)

Under the recently adopted Pennsylvania Criminal Rules of Procedure Rules 116(a) and 119(d), 19 P.S.Appendix, require that a defendant be advised of his right to counsel, and in a capital case, of his right to have counsel assigned at the preliminary hearing.

■ Following his preliminary hearing the relator was committed to the County Prison. From this point forward *under the circumstances of this case* the proceedings entered a "critical stage." Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964)

On the afternoon of August 20, 1958, the Detective Bureau desired to question the relator further regarding certain inconsistencies in his statement. A request by letter was made by the police to the District Attorney to have the relator returned to the police for additional interrogation. The District Attorney then requested the court to remove the relator from prison. An order termed a "bring up" was issued [2] and the Clerk of Quarter Sessions Court forwarded *his* signed order directing the Warden of the County Prison to turn the relator over to the police.

Thereafter, on August 20, 1958, the relator was questioned by the police in the presence of Broaddus and several detectives at City Hall. He remained in their custody from 3:16 p. m. until 9:41 p. m. At 7:35 p. m. the relator began his *second* statement which was completed at 8:10 p. m. In this statement the relator admitted that he took the dead guard's blackjack and sold it to a bartender for $1.25. He was then returned to County Prison. Both of the relator's statements were submitted to the jury and they determined their voluntary nature.

■ Under the recent case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) the voluntariness of a contested confession must be judicially determined before the confession is submitted to the jury. If this were the only ground asserted in this petition, we would have no hesitation in remanding the relator's petition to the state court in view of the recent Pennsylvania decisions holding that Jackson v. Denno is retroactive. Com. ex rel. Gaito v. Maroney, 416 Pa. 199, 204 A.2d 758 (1964); Com. ex rel. Butler v. Rundle, supra.

■ However, we find that the relator was deprived of due process when he was summarily taken from the County Prison and turned over to the police for further questioning. He was entitled to the advice of counsel at this "critical stage" of the proceeding.[3] The pretrial proceedings had sharply shifted from the "investigatory" to the "accusatory" and the accused was seriously prejudiced by what transpired. Escobedo v. Illinois, supra.

Under the facts of this capital case, we have a prisoner in jeopardy of his life who found himself compelled, by order of the very court which later tried him,[4] and without the guiding hand of counsel, to submit to the consequence of further incriminating himself. An incriminating statement obtained under the circumstances of this case could not constitutionally be used by the prosecution as evidence against Dickerson at his trial. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Escobedo v. Illinois, supra, 378 U.S. pp. 484, 485, 486, 84 S.Ct. 1758.

■■ It was suggested by the District Attorney that we dismiss the relator's petition and permit the state courts to rule on this matter in view of the above cited recent Supreme Court decisions which occurred subsequent to Dickerson's prior application before the Supreme

2. The record shows that the actual order signed by the Judge was missing from the record. According to the Clerk of Quarter Sessions Court, the Judge signs the "letter request" of the District Attorney and then the Clerk issues a "bring up" signed by the Clerk. The letter request is usually kept in the Clerk's files for six months to a year and then destroyed.

3. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

4. The record shows that the same Judge who approved the "bring up" became the trial judge.

Court of Pennsylvania. The record[5] reflects that the Supreme Court of Pennsylvania specifically considered the issue of "bring up orders" in such language as to indicate their approval of the practice.[6] The ultimate purpose of habeas corpus is:

"* * * to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner. In re Medley, Petitioner, 134 U.S. 160, 173, 10 S.Ct. 384, 388, 33 L.Ed. 835." Fay v. Noia, 372 U.S. 391, 430, 83 S.Ct. 822, 844, 9 L.Ed.2d 837 (1963)

It would be an abdication of our federal responsibility to insure prompt and fair criminal justice to require the relator to submit his constitutional claims anew via state habeas corpus.

"We shall not say more concerning the corrective process afforded to the petitioners than that it does not seem to us sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void." Mr. Justice Holmes, Moore v. Dempsey, 261 U.S. 86, 92, 43 S.Ct. 265, 267, 67 L.Ed. 543 (1923)

The only ground for which relief may be denied in federal habeas corpus is when the petitioner, after consultation with competent counsel or otherwise, understandingly and knowingly made a decision to deliberately by-pass state procedures. Jackson v. Denno, supra, 378 U.S. p. 370, 84 S.Ct. 1774, footnote 1; Fay v. Noia, supra, 372 U.S. 439, 83 S.Ct. 822. There is no such claim in this Court that the relator has deliberately by-passed his state remedies.

### ORDER

And now, this 9th day of February, 1965, the petition for a writ of habeas corpus is granted.

5. By agreement of counsel, we have used as the record in this matter, a copy of the record filed by the relator in his appeal to the Pennsylvania Supreme Court. This was necessitated by the absence of some 300 pages of testimony from the original record received by this Court from the Clerk of Quarter Sessions Court.

6. "* * * The court signed what is termed as a 'bring up' order. There is nothing sinister or secretive about this procedure and it is a practice commonly used, not only in Philadelphia County, but in other counties of the Commonwealth." Com. v. Dickerson, supra, 406 Pa. at p. 108, 176 A.2d at p. 424.