Commonwealth *v.* Dickerson, Appellant.

Argued November 28, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Walter Stein,* with him *Berger and Stein,* for appellant.

*Joseph M. Smith,* Assistant District Attorney, with him *Walter M. Phillips, Jr.* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion Per Curiam, January 9, 1968:
Order affirmed.

————

Dissenting Opinion by Mr. Justice Roberts:

Murray Dickerson was arrested on August 19, 1958 in connection with the murder of one Duffey. On the day of arrest he was questioned by police and a statement was obtained. Some time on the morning of the following day Dickerson was given a preliminary hearing before a magistrate and a commitment order was signed placing Dickerson in the hands of the prison authorities "there safely to keep to answer at the next Court of Oyer and Terminer."[1] Apparently dissatisfied with Dickerson's responses during the first interrogation, the district attorney obtained a "bring-up" order[2] on the afternoon of the 20th to have Dickerson taken from prison to police headquarters for further questioning. This second period of interrogation produced a statement which was substantially more in-

———

[1] This phrase is found in the form commitment order employed in the Philadelphia Quarter Sessions Courts.

[2] This order cannot be located and was at no time shown to petitioner or his counsel. The Commonwealth believes that such orders are as a matter of administrative routine destroyed six months after their issuance.

criminating than that first obtained; this statement was admitted over strenuous objection at Dickerson's trial.

It is conceded by the Commonwealth that the "bring-up" order is obtained ex parte without notice to either the prisoner or his counsel; in fact, it appears that the district attorney merely handed a Quarter Sessions judge an order which was perfunctorily signed without any inquiry as to the purpose of the proposed bring-up. Dickerson strenuously contends, and I agree, that this procedure was a sufficient violation of his constitutional rights to warrant the grant of a new trial.

To place Dickerson's contention in context a discussion of the rather complex prior litigation involving this claim is necessary. In direct appeal from his conviction Dickerson did contest the legality of the bring-up order and was rebuffed by this Court. See *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A. 2d 421 (1962). A habeas corpus action was then instituted. We denied relief, see *Commonwealth ex rel. Dickerson v. Rundle*, 411 Pa. 651, 192 A. 2d 347, cert. denied, 375 U.S. 915, 84 S. Ct. 214 (1963), holding that the habeas action presented questions identical to those answered on direct appeal and rejecting Dickerson's contention that he was entitled to counsel's aid in preparation of his habeas petition. Having exhausted his state remedies, Dickerson filed a federal habeas corpus petition which was granted by the district court primarily on the basis that the second statement was obtained at a time when representation of counsel is constitutionally required. See *United States ex rel. Dickerson v. Rundle*, 238 F. Supp. 218 (E.D. Pa. 1965). The Commonwealth appealed to the Third Circuit and that court modified the district court order, giving the Commonwealth the option of releasing Dickerson or granting him a *Jackson v. Denno* hearing in a state trial court.

See *United States ex rel. Dickerson v. Rundle*, 363 F. 2d 126 (3d Cir. 1966), cert. denied, 386 U.S. 916, 87 S. Ct. 880 (1967). It is from the denial below of *Jackson v. Denno* relief that Dickerson now appeals; however, he continues to press for a new trial on the basis of the bring-up procedure.

Although in Dickerson's direct appeal this Court insisted that there was "nothing sinister or secretive" about the bring-up procedure, I believe that both of these adjectives *are* unquestionably applicable. Not only was this bring-up order issued ex parte, but it is also condemned by state statute.[3] Judge FINLETTER, in ringing language with which I heartily concur, highlighted the evils inherent in this practice. See *Commonwealth v. Brines,* 50 C.C.R. 68, 29 Dist. 1091 (1920) : "I do not see that I have any power, by my mere order, to take the defendant against his will from the county prison, to which he has been lawfully committed to await trial, for any other purpose connected with his case except the trial.

"By the terms of the commitment, he is to remain in the county prison to answer the charge of murder, not to answer the call of any and every person, official or other, who may wish to meet him or speak to him. If his presence elsewhere is needed to answer any lawful demand which he would be compelled to answer if at liberty, it may be secured by a proper writ of *habeas corpus.*

"It seems to be forgotten that an accused is not a convict, and that it is only strong necessity that com-

---

[3] The Act of February 18, 1785, 2 Sm. L. 275, §12, 12 P.S. §1887 mandates the procedure which must be employed: "Any person being committed to any prison . . . for any criminal . . . matter, *shall not be removed* from the said prison or custody, . . . *unless it be by habeas corpus or some other legal writ,* . . ." (Emphasis supplied.) Clearly, the bring-up order here employed does not meet these requirements.

pels his detention *before* trial. It is a restraint of the liberty of his person which is unavoidable. It certainly should not be aggravated by the infliction of any unnecessary indignity.

"An accused, but unconvicted, prisoner is not to be bundled about the county at the beck and call of every policeman or prosecutor who may wish to see him." (Emphasis in original.)

I believe that Dickerson should be granted a new trial for the very simple reason that the bring-up request constituted a "critical stage" in these proceedings, a critical stage at which Dickerson was unrepresented by counsel.[4] *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963) clearly demonstrates that a preliminary hearing is a critical stage in the proceedings if the prisoner will be put at a substantial disadvantage in the absence of counsel. Our cases usually classify the preliminary hearing as noncritical because nothing, as a rule, there occurs to the detriment of the prisoner. However, if a preliminary hearing can be a critical stage when assistance of counsel is necessary to protect an indigent's rights, would counsel's services have not been equally efficacious in contesting what to me is an illegal bring-up order, an order issued after the preliminary hearing stage had been passed?[5]

Alternatively, I believe that the second period of questioning was a critical stage requiring representation of counsel. I well realize that the Third Circuit

---

[4] Had the proper procedure been followed, i.e., a writ of habeas corpus, Dickerson would clearly have been entitled to the benefit of counsel. I fail to see how utilization of an improper procedure can relieve the state from fulfilling this responsibility. Furthermore, I think there can be no doubt that this procedure is today patently unconstitutional under *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966).

[5] No showing that appellant was actually prejudiced by the absence of counsel is necessary if, in fact, the request for the bring-up order was a critical stage. See *White v. Maryland,* supra.

in *United States ex rel. Dickerson v. Rundle,* supra at 129, a decision followed by this Court in *Commonwealth ex rel. Mount v. Rundle,* 425 Pa. 312, 319-20, 228 A. 2d 640, 644-45 (1967)[6] has held that the intervention between the first and second interrogation sessions of the preliminary hearing is without legal significance. I believe that this position is a distortion of the holding of *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199 (1964). In *Massiah,* defendant, after indictment and while released on bail, made incriminating statements which were overheard by police through use of a listening device. Holding that these statements could not be employed at Massiah's trial because they were obtained in the absence of counsel, the Court adopted the position of the concurring Justices in *Spano v. New York,* 360 U.S. 315, 79 S. Ct. 1202 (1959). It thus insists (377 U.S. at 204, 84 S. Ct. at 1202) : "[T]he Constitution require[s] reversal of the conviction upon the sole and specific ground that the confession had been deliberately elicited by the police after the defendant had been indicted, and therefore at a time when he was clearly entitled to a lawyer's help. . . [A] Constitution which guarantees a defendant the aid of counsel at such a trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding." This Court in *Mount* fastened upon the Supreme Court's mention of the indictment to hold that only post-indictment questioning violates the retroactive command of *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963). I do not believe that such a distinction between post-preliminary hearing and post-indictment questioning is tenable nor do I believe that the Supreme Court in *Massiah* intended such a distinction. For me, the pro-

---

[6] The writer of this opinion did not participate in the *Mount* decision.

bative difference is that the prisoner has been placed in the charge of the prison authorities (or is on bail); that he is being held either under the authority of a preliminary hearing or under an indictment is a distinction for these purposes without a legally relevant difference. Post-preliminary hearing interrogation in the absence of counsel contravenes the basic dictates of fairness in the conduct of criminal litigation to the same extent as post-indictment interrogation. The essential inquiry is whether Dickerson had progressed sufficiently far into the criminal process that counsel became mandatory; certainly, if the preliminary hearing itself can be sufficiently far, post-preliminary hearing questioning must be as well. The police, having completed their investigation, should be disentitled from further contact with the prisoner unless this contact is effectuated by legal process—and legal process, a fortiori, would here require counsel.

Finally, I do not believe that either Dickerson's direct appeal or his collateral attack without the aid of counsel can be deemed a waiver of his right to litigate on the basis of *White* and *Massiah* the validity of the bring-up order and the subsequent questioning. Both of these decisions followed Dickerson's direct appeal and *Massiah* was announced after the collateral attack. The collateral proceeding, conducted in the absence of counsel, should not be considered a waiver of these claims. See *Commonwealth v. Kizer*, 428 Pa. 99, 236 A. 2d 515 (1967). Furthermore, the direct appeal cannot work a waiver for counsel cannot waive grounds for relief now retroactive but of which he had no knowledge at the time of appeal. The Constitution does not demand such prescience. See *O'Connor v. Ohio*, 385 U.S. 92, 87 S. Ct. 252 (1966); *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A. 2d 765 (1967).

I dissent.