Commonwealth *v.* Broaddus, Appellant.

Submitted April 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Eric L. Lilian,* for appellant.

*Bonnie Brigance Leadbetter* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 26, 1974:

In February 1959, Spencer Broaddus, the appellant, while assisted by counsel, entered a plea of guilty to murder generally. After an evidentiary hearing before a three-judge court, he was found guilty of murder in the first degree and was sentenced to life imprisonment. No appeal was filed.

In September 1964, Broaddus instituted an action in habeas corpus in the trial court, which was later dismissed. No appeal was entered from this order.

In 1967, Broaddus filed a petition in the trial court under the Post Conviction Hearing Act,[1] and, after a counseled evidentiary hearing, relief was denied. This order was subsequently affirmed by this Court on appeal. See 428 Pa. 599, 239 A.2d 204 (1968). Broaddus was not represented by counsel in this appeal.

In 1968, Broaddus sought habeas corpus relief in the Federal District Court, and, after a counseled evidentiary hearing, relief was denied. On appeal, this order was affirmed by the United States Court of Appeals for the Third Circuit. See *United States ex rel. Broaddus v. Rundle,* 429 F.2d 791 (3rd Cir. 1970).

In August 1970, Broaddus filed a second petition in the trial court under the Post Conviction Hearing Act, which was denied without a hearing. The instant appeal challenges the correctness of that order.[2]

---

[1] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq.

[2] This case was assigned to the writer on January 15, 1974, for the purpose of preparing an opinion expressing the views of a majority of this Court.

The prosecution emanated from the fatal shooting of a security guard in a housing project in Philadelphia on August 15, 1959. Three days after the occurrence, Broaddus surrendered voluntarily to the police and, during the questioning, admitted being involved in the shooting, but said the victim was shot by his own gun during a tussle between the two. He said Murray Dickerson was with him at the time. A preliminary hearing was held, and Broaddus was ordered committed to the county prison to await grand jury action. Within a few hours after his commitment, the police requested a judge of the Court of Oyer and Terminer and General Jail Delivery and Quarter Sessions in Philadelphia to sign a "bring-up" order, i.e., authority to transfer Broaddus temporarily from the prison to the district attorney's office in City Hall for further questioning. The order was executed and Broaddus was transferred and questioned as indicated. During this questioning, Broaddus again admitted his involvement in the shooting, and also stated he stole the victim's watch and wallet after the shooting. Broaddus was without counsel during this questioning.

At the hearing to determine the degree of guilt, evidence of the inculpatory statement made by Broaddus in the district attorney's office following the "bring-up" order was introduced against him without objection. Broaddus now contends the admission of this evidence violated due process. He argues the "bring-up" order proceeding was a critical stage in the prosecution process at which he was entitled to be represented by counsel, and since the statement resulted from a proceeding conducted under circumstances constitutionally impermissible, it could not be used as evidence against him.[3]

---

[3] Even if the challenged evidence were erroneously admitted at the degree of guilt hearing, this would not invalidate the guilty plea,

This very same argument was urged upon this Court in *Commonwealth ex rel. Johnson v. Rundle*, 440 Pa. 485, 270 A.2d 183 (1970), and upon the United States Court of Appeals for the Third Circuit in *United States ex rel. Dickerson v. Rundle*, 430 F.2d 462 (3rd Cir. 1970), and in both instances the Court ruled a "bring-up" order proceeding is not a critical stage in the prosecution process where the accused is entitled to be represented by counsel. Broaddus contends *White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050 (1963),[4] and *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157 (1961), compel a different conclusion. We disagree.

Initially, it is clear the principles enunciated in *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970), have no application instantly. Consequently, we do not now decide if a "bring-up" order proceeding is a critical stage under *Coleman*. In *Coleman*, the Supreme Court of the United States ruled the determination of whether a judicial proceeding is a critical stage depends upon an examination of "whether potential substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid prejudice." This formula, however, is not applicable to the 1958 "bring-up" order proceeding under consideration, since the Supreme Court has expressly ruled the *Coleman* decision is not to be given retroactive effect. See *Adams v. Illinois*, 405 U.S. 278, 92 S. Ct. 916 (1972).

To adopt Broaddus' position that *White* and *Hamilton* control the disposition of the instant case would require giving these two cases an overly broad reading and application. We view *White* and *Hamilton* as hold-

---

but would require a new hearing to determine the degree of guilt. See *Commonwealth v. Chambers*, 432 Pa. 253, 247 A.2d 464 (1968).

[4] *White* was held to be retroactive in *Arsenault v. Massachusetts*, 393 U.S. 5, 89 S. Ct. 35 (1968), thus *White* must be considered in determining if the 1958 "bring-up" order proceeding here involved constituted a critical stage.

ing a judicial proceeding is a critical stage only in cases where lack of an attorney at the proceeding directly prejudices the accused. Hence, to come within the holding of these two cases the prejudice must have arisen *at* a judicial proceeding. In *White,* there was prejudice because a plea of guilt at the preliminary hearing was subsequently used against the accused at trial. Likewise, in *Hamilton,* there was prejudice because if the accused failed to assert a defense at the preliminary hearing, the defense could be lost forever. Thus, the lack of the assistance of an attorney gave rise to prejudice *during the proceeding,* which affected the accused's rights at trial. Presently, the complained of prejudice did not arise during the proceedings in which the "bring-up" order was requested and granted.

In *Adams v. Illinois,* supra, Mr. Justice BRENNAN, in discussing the retroactive application of *Coleman,* clearly expressed the view of the Supreme Court that *White* and *Hamilton* are narrow in their import. He stated: "We do not think that law enforcement authorities are to be faulted for not anticipating Coleman. There was no clear foreshadowing of that rule. A contrary inference was not unreasonable in light of our decision in Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114, and White v. Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963). Hamilton denominated the arraignment stage in Alabama critical because defenses not asserted at that stage might be forever lost. White held that an uncounseled plea of guilty at a Maryland preliminary hearing could not be introduced by the State at trial. Many state courts not unreasonably regarded Hamilton and White as fashioning limited constitutional rules governing preliminary hearings." 405 U.S. 283, 92 S. Ct. at 920.

In *United States ex rel. Dickerson v. Rundle,* supra, in ruling *White* and *Hamilton* did not mandate a "bring-up" order proceeding to be a critical stage, the

Court aptly stated: "The doctrines of White v. Maryland, supra [and] Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961) . . . are judicially crafted benchmarks which delineate particular phases in criminal proceedings when the right to counsel attaches absolutely under the Sixth Amendment. But this right attaches not so much by the chronology of proceedings or even by the interposition of ancillary judicial proceedings as it does by the accumulation of a circumstantial complex which heightens the probability that there will be violence to constitutional rights of one whom the authorities are prosecuting. . . .

"Similarly, the judicial proceedings designed to cause a 'bring-up order' to issue was not a critical proceeding. The issuance of the 'bring-up order' for Dickerson was not a judicial inquiry into guilt *vel non* of the defendant; it was an administrative procedure authorizing the transfer of the prisoner from the county prison to police headquarters to make him available for questioning. Prior to the preliminary hearing, the prisoner could have been moved from one police lockup to another stationhouse or to detective headquarters without the necessity of any court order. Such movement, in and of itself, would not create a situation in which there would be a right to counsel. The issuance of a court order which accomplished, after a preliminary hearing, that which could have been effected before the hearing without such an order does not, in our view, constitute the critical event in the chain of proceedings." 430 F. 2d at 466.[5]

Hence, we conclude *White* and *Hamilton* are only applicable where the complained of prejudice arose in the proceeding.[6] Consequently, the cases have no appli-

---

[5] This Court accepted the rationale of *United States ex rel. Dickerson* in *Commonwealth ex rel. Johnson v. Rundle*, supra.

[6] It could be argued that *Commonwealth v. Horner*, 453 Pa. 435, 309 A.2d 552 (1973), controls the disposition of the instant case.

cation instantly. To read the cases as broadly as Broaddus suggests would be to give them an interpretation synonymous with *Coleman*.[7]

We, therefore, believe the focus of our inquiry must be on the interrogation period which followed the "bring-up" order. This is obviously a critical stage under *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199 (1964) ; however, the prevailing view in this jurisdiction in *Massiah* is not to be given retroactive application. See *Commonwealth ex rel. Johnson v. Rundle,* supra; *United States ex rel. Dickerson v. Rundle,* supra; *United States ex rel. Allison v. New Jersey,* 418 F.2d 332 (3d Cir. 1969).[8]

Thus, the crucial issue is the voluntariness of the statement made by Broaddus during this period. In *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A.2d 421 (1962), we recognized this very fact and stated: "The defendant also complains that the trial court, by its charge, deprived the defendant of a fair consideration by the jury of whether his statement to the police was voluntarily given. It appears that on August 19, the

However, a close reading of *Horner* clearly shows that case finds its foundation in *White* and *Hamilton*. The prejudice therein arose at the judicial hearing, therefore, *Horner* is distinguishable.

[7] We also note that the propriety of bring-up orders has long been established in this Court. See *Commonwealth v. Trunk,* 311 Pa. 555, 167 A. 333 (1933).

[8] In *Johnson*, we stated: "Appellant's contention has now been answered by the Third Circuit in United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3rd Cir. 1970). . . . There the majority of the court held that a defendant, interrogated *after* his preliminary hearing, and pursuant to an ex parte bring-up order, 'stood in the same legal shoes as did the defendant in Massiah,' id. at 467, and hence his interrogation did constitute a critical stage requiring counsel. *Massiah's* protection, however, is not to be retroactively applied, so that Dickerson's confession was therefore properly utilized. See United States ex rel. Allison v. New Jersey, 418 F.2d 332 (3rd Cir. 1969)." 440 Pa. at 488, 270 A.2d at 184.

defendant gave his first written statement to the police. On the morning of August 20, he was taken before a magistrate, arraigned and committed to the county prison. On the afternoon of August 20, in open court, the district attorney requested permission of the court to remove the defendant from the prison, for the purpose of further questioning in an effort to clear up certain statements he had previously made which did not coincide with facts disclosed by the investigation. The court signed what is termed as a 'bring-up' order. There is nothing sinister or secretive about this procedure and it is a practice commonly used, not only in Philadelphia County, but in other counties of the Commonwealth.

"When a defendant is questioned, under such circumstances, he may elect to cooperate or refuse to do so as he sees fit. If the police wished to question him further after his arraignment, certainly, they would have the right to do so within the confines of the prison and the fact that they saw fit to remove him from the prison for this purpose did not result in any prejudice. The pertinent inquiry concerning the validity of a confession or statements made by a defendant is their voluntariness or involuntariness. Of course, in determining this question, the jury must consider all of the circumstances including the manner in which, and the locale under which, they were given." Id. at 107-108, 176 A.2d at 424. However, after a review of the record, we are convinced Broaddus is now foreclosed from attacking the voluntariness of his statement. As noted before, at the degree of guilt hearing held in 1958 Broaddus' statement was admitted without objection, and there was no attack on its voluntariness; nor is the competency of the trial counsel now questioned. Under these circumstances, Broaddus may not raise the issue now. See *Commonwealth v. Jones,* 446 Pa. 223, 285 A.2d 477

(1972) ; *Commonwealth v. Nash,* 436 Pa. 519, 261 A.2d 314 (1970) ; *Commonwealth v. Snyder,* 427 Pa. 83, 233 A.2d 530 (1967) ; *Commonwealth ex rel. Sanders v. Maroney,* 417 Pa. 380, 207 A.2d 789 (1965).

In *Sanders,* this Court recognized the necessity for a contemporaneous objection stating: "Appellant-petitioner does not contend, nor does the record indicate, that his plea of guilty was anything other than voluntarily and intelligently entered. On this record, the plea having been accepted by the court, the court's sole inquiry was to determine the degree of guilt and the penalty. Petitioner's 'plea constituted an admission of guilt and of all the facts averred in the indictment; it constituted a waiver of all non-jurisdictional defects and defenses.' Commonwealth ex rel. Walls v. Rundle, 414 Pa. 53, 55, 198 A.2d 528, 529 (1964). Of course, this does not mean that a defendant who has pleaded guilty to murder waives the right to object to the admission of improper evidence which will bear on the degree of guilt and the punishment to be imposed. In the instant case, however, there was no attack on the involuntariness of petitioner's confession. There was no challenge to the voluntariness based either upon the absence of counsel at any stage of the proceedings or upon any other premise. Petitioner at no time, for any reason, contended that his confession was involuntary.

"Since the voluntariness issue was not raised for determination by the court which heard the testimony on the plea, it is deemed waived and we need not pass upon it in a habeas corpus proceeding. Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A.2d 810 (1965). The principles governing the need for the timely raising of an issue apply equally to proceedings upon pleas of guilty as well as to trial proceedings." Id. at 382-83, 207 A.2d at 790-91. Thus, appellant is

foreclosed from attacking the voluntariness of his statement[9] at this late date.

Order affirmed.

---

[9] The Third Circuit recognized this point in their review of Broaddus' federal habeas corpus petition. The Court stated:

"The United States Supreme Court has recognized that the contemporaneous objection rule serves a 'legitimate state interest' and will under proper circumstances prevent the tardy assertion of error after trial. Henry v. Mississippi, 379 U.S. 443, 447, 85 S. Ct. 564, 13 L.Ed.2d 408 (1965).

"In the present case, it seems abundantly clear that defense counsel did not object to the admission of this statement at the degree-of-guilt hearing because they had concluded that the statement was admissible. This conclusion was no doubt based in some measure on Broaddus' statement to his lawyers that he 'voluntarily gave information'. Under these circumstances, we hold that even if the McMann trilogy does permit an inquiry into the admissibility of the statement, the failure to raise objection to its admission at the degree-of-guilt hearing was a deliberate by-pass of the state procedures available to test admissibility in the first instance and now prevents its consideration in a collateral proceeding. Fay v. Noia, 372 U.S. 391, 434, 438-439, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963)." 429 F.2d at 795.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that Spencer Broaddus may not now challenge the admission of his inculpatory statement. No objection was made when the statement was introduced into evidence, and this Court will not consider alleged trial errors for the first time on appeal. *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972). In my view, this case begins at the introduction of the statement and ends at its admission without objection.

I must, however, dissociate myself from the majority's gratuitous historical survey of the misapplication of *White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050 (1963), and *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157 (1961), by this Court and the federal courts of this

circuit. That *White* and *Hamilton* require the assistance of counsel at every critical stage in a criminal prosecution cannot be denied. In 1968 I stated my view that the ex parte issuing of a "bring-up" order is a critical stage. *Commonwealth v. Dickerson,* 428 Pa. 564, 565, 237 A.2d 229, 230 (1968) (dissenting opinion). Today's majority opinion has done nothing to change my judgment. And the right-to-counsel cases decided since 1968 have only confirmed my *Dickerson* views.[1] *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999 (1970); *Adams v. Illinois,* 405 U.S. 278, 92 S. Ct. 916 (1972).

It is indeed difficult to imagine an in-custody situation that has greater potential for prejudice than ex parte issuance of a "bring-up" order. Here a prisoner

---

[1] In 1962 Murray Dickerson, Broaddus' codefendant, contested the legality of his "bring-up" order, *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A.2d 421 (1962), and one year later requested a writ of habeas corpus. *Commonwealth ex rel. Dickerson v. Rundle,* 411 Pa. 651, 192 A.2d 347, cert. denied, 375 U.S. 915, 84 S. Ct. 214 (1963). On each occasion this Court denied relief.

The federal district court then granted Dickerson habeas relief because of denial of counsel at the interrogation following the "bring-up" order. *United States ex rel. Dickerson v. Rundle,* 238 F.Supp. 218 (E.D. Pa. 1965). The court of appeals modified this order and returned the case to the state courts for the hearing required by *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964). *United States ex rel. Dickerson v. Rundle,* 363 F.2d 126 (3d Cir. 1966), cert. denied, 386 U.S. 916, 87 S. Ct. 880 (1967). Relief was again denied and this Court affirmed per curiam without opinion. *Commonwealth v. Dickerson,* 428 Pa. 564, 237 A.2d 229 (1968). This writer filed a dissenting opinion. Id. at 565, 237 A.2d at 230.

Dickerson returned to federal court. The district court, in an unreported order, again granted habeas relief. The court of appeals, after argument before a three-judge panel and two en banc rearguments, reversed by a vote of four to three. Chief Judge HASTIE, and Judges FREEDMAN and ADAMS dissented. The United States Supreme Court denied certiorari. *Commonwealth ex rel. Dickerson v. Rundle,* 430 F.2d 462 (3d Cir. 1970), cert. denied, 408 U.S. 928, 92 S. Ct. 2498 (1972).

held for the grand jury is removed under the authority of a "bring-up" order—a judicial document—and taken not to court, but to police headquarters for interrogation.[2]

This Court has recently defined "critical stage." In *Commonwealth v. Horner*, 453 Pa. 435, 440, 309 A.2d 552, 555 (1973), we rejected the Commonwealth's argument that Horner's preliminary hearing was not a

---

[2] I agree with the analysis of the constitutionality of "bring-up" orders expressed by Mr. Justice MANDERINO in his dissenting opinion. Further, I wish to note that, contrary to the assertion of the majority (see note 7 of the majority opinion), *Commonwealth v. Trunk*, 311 Pa. 555, 167 A. 333 (1933), does not indicate that "the propriety of bring-up orders has long been established in this Court."

Trunk was the County Detective of Montgomery County. His co-defendants were a chief of police and an assistant district attorney. "Thomas Campbell, a negro, prosecuted them charging that they had committed upon him an aggravated assault and battery and had falsely imprisoned him." Id. at 559, 167 A. at 335. The defendants were sentenced to terms at hard labor and the Superior Court affirmed.

This Court granted the defendants a new trial because of the trial judge's charge to the jury. That charge, the Court found, characterized the defendants' conduct in having Campbell removed from the county jail so that they could interrogate him at police headquarters. Specifically this Court found that the trial judge's charge had improperly removed from the jury's consideration the issue of the defendants' good faith. Reversal was based on the trial judge's jury charge not on the legality of the "bring-up" order.

In my view, a prisoner should be released from jail only upon a proper court order and only when his presence is required in court. If police or assistant district attorneys want to interrogate a prisoner being held for grand jury action, they may, like defense counsel or agents of the Federal Bureau of Investigation, come to the prison and use the interview facilities there available. Transporting an accused from jail to police headquarters for interrogation under the compulsion of a judicial "bring-up" order is, in my view, inherently coercive. Defense counsel should be given the opportunity to contest the issuance of such a critical order without regard to where the prejudicial event occurs.

"critical stage." Speaking through Mr. Justice EAGEN, we stated: "The Commonwealth argues the preliminary hearing instantly may not be considered a critical stage in the prosecution proceedings, because as distinguished from White and Arsenault [*v. Massachusetts*, 393 U.S. 5, 89 S. Ct. 35 (1968)], it did not involve the entry of a guilty plea. Accepting that the use of the entry of a guilty plea at a preliminary hearing is not the same as utilizing the testimony of the accused that he shot and killed a person in self-defense, nonetheless, prejudice did result to Horner by the trial use of his testimony at the preliminary hearing, and this prejudice renders the preliminary hearing a 'critical stage.'" Even the closest reading of *Horner* does not reveal how it may be distinguished from the instant case.[3]

As the majority notes, *Horner* finds its foundation in *White* and *Hamilton*. This fact does not, however, lead to the conclusion that a judicial hearing may be a "critical stage" only when the prejudice complained of arises at that hearing. The *Horner* test is whether use of the unconstitutionally-obtained testimony results in prejudice. If it does, this prejudice shows that when the testimony was taken, the accused was involved in a "critical stage" of a criminal proceeding.

Had *Hamilton* and *White* never been decided, the "bring-up" order interrogation procedure here employed would still be constitutionally impermissible. The majority justifies its denying Broaddus relief by focusing on the date of his confession. Had he been interrogated after *Massiah v. United States*[4] was decided, even the majority concedes, the confession would be inadmissible.

"Only the technical operation of a judicial concept of nonretroactivity prevents the Massiah rule from ap-

---

[3] See note 6 of the majority opinion.
[4] 377 U.S. 201, 84 S. Ct. 1199 (1964).

plying here. But that technicality cannot make the denial of counsel at a critical stage of a criminal proceeding, which is unconstitutional to-day, wholly unobjectionable when it was experienced . . . in 1958. Massiah did not make the procedure there condemned unfair. Rather, judicial perception of unfairness made Massiah." *United States ex rel. Dickerson v. Rundle,* 430 F.2d 462, 469-70 (3d Cir. 1970), cert. denied, 408 U.S. 928, 92 S. Ct. 2498 (1972) (HASTIE, C. J., dissenting, joined by FREEDMAN and ADAMS, JJ.)

Like Judge, then Chief Judge, HASTIE, I believe the issuance of the "bring-up" order and the interrogation conducted without defense counsel were fundamentally unfair. Use of the resulting confession denied appellant due process of law.

I cannot join an opinion which sanctions this unconstitutional police practice.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I must dissent. Every person accused of crime is a person presumed innocent. An accusation by one person (police) against another person (accused) does not relegate the person accused to the status of a second-class citizen. An accused, until he is pronounced guilty by his peers, is entitled to the protections provided by the federal and state constitutions. The sixth amendment to the Federal Constitution and article I, section 9, of the Pennsylvania Constitution, guarantee that in all criminal prosecutions, the accused (a citizen presumed innocent) is entitled to the assistance of counsel. The constitutional guarantees given to an accused (a citizen presumed innocent) do not say that one is entitled to the assistance of counsel *sometime* or *only at critical stages* or only when a judge decides counsel is needed, or only at preliminary hearings. An accused (a citizen presumed innocent) is entitled to his consti-

tutional guarantees *at all times* from the initial moment that the person becomes an accused (a citizen presumed innocent).

If an accused (a citizen presumed innocent) is denied the assistance of counsel *at any time*, the denial might be harmless. If, *however*, it is harmful—rather than harmless—the accused's conviction cannot be allowed to stand.

An accused (a citizen presumed innocent) does not lose any constitutional rights. In addition to the right to the assistance of counsel, an accused (a citizen presumed innocent) is entitled, under the fourth amendment to the Federal Constitution and article I, section 8, of the Pennsylvania Constitution, to be *secure in his person*. An accused (a citizen presumed innocent) cannot be *seized* at the pleasure of any justice, judge, magistrate, policeman, or any other of his fellow citizens. An accused (a citizen presumed innocent) who is in a jail cell does not become a hunk of human flesh stripped of his dignity and his *person*. A jail cell in which an accused (a citizen presumed innocent) is placed does not become a conversion chamber for the kinetic transformation of a human into a lower animal state. Cattle may be herded from place to place, they have no constitutional protections (at least not in our country) to be secure in their cattleness from being arbitrarily seized and shuffled from place to place. A judge in our system has no authority to order a person removed, when he is in a jail cell pursuant to probable cause, at the arbitrary pleasure of the judge or the police.

The first seizure of an accused (a citizen presumed innocent) pursuant to probable cause supports incarceration. It does not support successive arbitrary seizures shuffling an accused (a citizen presumed innocent) from place to place. Each successive seizure after the initial seizure must be reasonable.

The majority not only has decided that the defendant in this case (a citizen presumed innocent) is *only sometimes* entitled to the assistance of counsel, but has also decided that the defendant (a citizen presumed innocent) may be seized and herded around at the pleasure of a judge who need not answer to anyone.

I must dissent from the loose, liberal, and unreasonable interpretation given by the majority to the federal and state constitutions. Commonsense—not finely spun grammatical cloth—is the root of a written constitution. If an *innocent* person (maybe you or me) can have counsel only *sometimes* and can be *seized and shuffled anytime*, our written constitutional guarantees might as well be pedagogical propaganda for the classroom.

The majority does not deny that the defendant suffered harm in this case. The majority concludes, however, that since the harmful evidence was not obtained *during a hearing,* but was obtained *as a result of a hearing,* there is no relief. Suppose, at a preliminary hearing, a defendant (a citizen presumed innocent) is not represented by counsel, and says nothing, but the magistrate orders the defendant (a citizen presumed innocent), at the conclusion of the hearing, to be taken into an adjoining room for police interrogation. In the adjoining room, instead of during the hearing, a statement is obtained. Under the reasoning of the majority, had the statement been made in the *public chamber* of the magistrate, it would not be admissible, but when made in the adjoining *secret chamber,* it becomes admissible. That is exactly what happened in this case except that a judge issued the order instead of a magistrate. Strange our constitutions protect an accused in public chambers, but must wait outside the doors of secret chambers. I cannot agree. People—not places—have rights.

Even accepting the majority's premise that we must determine what constitutes a critical stage, I must dissent. A critical stage is *any stage* in which the denial

of the assistance of counsel is *harmful* rather than *harmless error.*

Initially, appellant pled not guilty and a jury trial began in February of 1959. At the conclusion of the prosecution's case, however, the appellant withdrew his plea of not guilty and entered a plea of guilty to murder generally. In April and May of 1959, a degree of guilt hearing was conducted before a three-judge panel. During the degree of guilt hearing, the statement obtained from the appellant pursuant to the judicial order was introduced into evidence in an attempt to establish first degree murder under the felony-murder rule. The appellant was convicted of first degree murder and sentenced to life imprisonment.

Appellant claims that the judicial proceeding held at the request of the prosecution was a critical stage in his pretrial proceedings. It was a critical stage because the proceeding resulted in prejudice to him in that evidence obtained as a result of that judicial proceeding was later used against the appellant during his degree of guilt hearing. Appellant received no notice of the judicial proceeding and was not represented by counsel. In fact, appellant was not represented by counsel after his arrest, at his preliminary hearing, at the judicial proceeding, or at the time the second incriminating statement was obtained. I agree with the appellant that he was deprived of his constitutional right to the assistance of counsel at a critical stage.

The United States Supreme Court has consistently held that a defendant is entitled to the assistance of counsel at every critical stage in the proceeding against him. In *White v. Maryland*, 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050 (1963), the Court found that a preliminary hearing was a critical stage at which counsel was required to protect the defendant *from prejudice at trial.* The prejudice in *White* was the *use at trial* of a guilty plea entered at a preliminary hearing with-

out the assistance of counsel. In *Arsenault v. Massachusetts,* 393 U.S. 5, 21 L. Ed. 2d 5, 89 S. Ct. 35 (1968), a guilty plea and statements made by the defendant at a preliminary hearing without the assistance of counsel were *used at trial.* *Arsenault* reaffirmed *White* and further held, citing *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), and *Douglas v. California,* 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963), that *White* was fully retroactive. *Arsenault* like *Gideon* and *Douglas* thus requires the reversal of any conviction in which the defendant was prejudiced by the *use at trial* of evidence obtained at a critical stage at which the defendant was deprived of the assistance of counsel.

In *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970), the Court reaffirmed the principle of *White* and *Arsenault* that a defendant is entitled to the assistance of counsel at a critical stage. *Coleman* said that it was necessary to scrutinize *not only the preliminary hearing but any pretrial confrontation* of the accused to determine whether it was so critical so as to require the presence of counsel to preserve the defendant's basic right to a fair trial. *Coleman* said that the accused is guaranteed that he *need not stand alone* against the state *at any stage* of the prosecution, formal or informal, *in court or out,* where counsel's absence *might* derogate from the accused's right to a fair trial. *Coleman* further said that it is necessary to analyze whether *potential* substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

It is important to note that *Coleman,* unlike *White* and *Arsenault,* did not reverse the defendant's conviction even though he was deprived of the assistance of counsel at the preliminary hearing. The conviction was not reversed because Alabama law *prohibited the use at trial* of anything that occurs at the preliminary hearing.

The Court, however, said that other possible prejudice, aside from the use of evidence at trial, might occur during a pretrial confrontation without the assistance of counsel. *Coleman,* theretofore, remanded the case for a determination of whether prejudice, other than the use of evidence at trial, had occurred. In *Adams v. Illinois,* 405 U.S. 278, 31 L. Ed. 2d 202, 92 S. Ct. 916 (1972), it was held that *Coleman* is not to be retroactively applied. The defendant, in *Adams,* was denied relief because there was no claim of *actual* prejudice, at trial or otherwise, by the lack of counsel at the pretrial confrontation. *Adams* specifically held that any such claim would have entitled the defendant to a hearing without regard to the holding in *Adams* that *Coleman* was not to be retroactively applied. Convictions after *Coleman,* therefore, will be reversed if the defendant was deprived of assistance of counsel at any pretrial confrontation where there was a *potential* for prejudice. *White,* which is fully retroactive under *Arsenault,* requires reversal of any conviction if *actual prejudice* rather than potential prejudice resulted.

In *Commonwealth v. Horner,* 453 Pa. 435, 309 A.2d 552 (1973), the defendant testified at a preliminary hearing, without the assistance of counsel, that he had shot and killed the victim in self-defense. The statements resulting from the preliminary hearing were used at trial by the prosecution. The issue in *Horner,* was controlled by *White* and *Arsenault,* not *Coleman* and *Adams.* In reversing the judgment of sentence, we stated: "[P]rejudice did result to Horner *by the trial use* of his testimony at the preliminary hearing, and *this prejudice renders the preliminary hearing a 'critical stage.'* " (Emphasis added.) *Id.* at 440, 309 A.2d at 555.

In the present case, a judicial proceeding resulted in the obtaining of inculpatory statements from the appellant. The appellant was given no notice of that proceeding and did not have the assistance of counsel. Had

counsel and the appellant been present at the pretrial judicial proceeding, he might have challenged the court's authority to grant the prosecution's petition, he might have advised the appellant to remain silent, he might have informed the appellant as to the operation of the felony-murder rule, or he might have taken other steps to prevent prejudice to the appellant in violation of the appellant's constitutional right to the assistance of counsel. I, therefore, conclude, as in *Horner*, that prejudice did result to the appellant by the *trial use* of his prior statements. This prejudice rendered the judicial proceeding that produced the statements a critical stage. *See Commonwealth v. Dickerson*, 428 Pa. 564, 237 A.2d 229 (1968) (Justice ROBERTS dissenting) ; *cf. Commonwealth ex rel. Johnson v. Rundle*, 440 Pa. 485, 270 A.2d 183 (1970) (Justice ROBERTS dissenting). Since actual prejudice at trial resulted from the denial of counsel at a pretrial proceeding, retroactive application of *White*, is required.

The issue raised in this appeal was previously raised by the appellant's co-defendant on two occasions in this Court and relief was denied. *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (decided January 2, 1962) and 428 Pa. 564, 237 A.2d 229 (decided January 9, 1968). *Arsenault*, which held that *White* was to be fully retroactive, however, was not decided until October 14, 1968, six years after the first *Dickerson* decision and ten months after the second *Dickerson* decision. The *Arsenault* decision, along with the *Coleman* decision in 1970, and the *Adams* decision in 1972, have now defined the full scope of the constitutional right of a defendant to the assistance of counsel at any pretrial proceeding.

Since the appellant pleaded guilty to murder generally, and does not now attack that plea, it need not be disturbed. The judgment of sentence for first degree

murder, however, should be vacated and the record remanded for a new degree of guilt hearing.

I must also dissent for another reason. Even if there were no issue raised in this appeal concerning the assistance of counsel, I would remand the case for an evidentiary hearing on another issue. The appellant, in both his 1967 PCHA hearing and in his 1970 PCHA hearing, specifically raised the issue of the denial of his *Douglas* right of appeal following his judgment of sentence in 1959. *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). Although testimony was taken on this issue at the hearing following the 1967 petition, the trial court made no findings and did not address itself to this issue. When the issue was raised by the appellant in 1970, no testimony was taken and the trial court did not make any findings or address itself to the issue. Since this is a first degree murder case, we should not ignore the appeal issue which appellant has raised twice in the trial court. *Cf.* Act of February 15, 1870, P. L. 15, §§ 1-2, 19 P.S. §§ 1186-87. I would remand for an evidentiary hearing, findings of fact and conclusions of law on this issue. This alternate relief, however, should not be necessary since the judgment of sentence for first degree murder should be vacated and the record remanded for a new degree of guilt hearing.