498 A.2d 891

**COMMONWEALTH of Pennsylvania**

v.

**Earl PALMER, Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 1985.

Filed Sept. 6, 1985.

See also 276 Pa.Super. 473, 419 A.2d 555.

Marilyn J. Gelb, Philadelphia, for appellant.

Alan J. Sacks, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from judgment of sentence for first degree murder. Because the crime was committed prior to enactment of 42 Pa.C.S.A. § 9711, the death sentence rendered by the jury was vacated and life imprisonment imposed. *See Commonwealth v. Story*, 497 Pa. 273, 440 A.2d 488 (1982).

The conviction stems from appellant's strangulation slaying of a 71 year old female resident of the apartment building in which he resided, and his necrophilic mutilation of the body. Shortly after the murder, appellant was questioned for approximately 24 hours by police, and released for lack of probable cause to arrest. One month later he lured another woman to the apartment, now vacant, in which the killing had occurred, raped and strangled her. She survived the attack, ran outside and identified appellant as her assailant to a passing police officer, whereupon appellant was taken into custody. Three days thereafter a "bring-down" order authorizing appellant's temporary removal from the Philadelphia House of Detention was presented by police who transported him to the Police Administration Building for interrogation concerning the murder. Appellant was told that he was being arrested for the murder, Mirandized, and during the course of the questioning which followed the arrest, appellant confessed, giving police the statement which forms the basis for the first issue raised upon appeal.[1]

Appellant contends, in a tripartite argument, that the admission of his confession at trial was reversible error. The first rung of his syllogistic ladder is that the bring-down order under the auspices of which he was transferred

---

1. Appellant has raised nine other issues. Of these, none merit our attention.

to police headquarters for questioning, violated the habeas corpus statute, 12 P.S. § 1887,[2] repealed eff. June 27, 1978, rendering his custody unconstitutional, and, as a necessary adjunct, its fruits tainted beyond admissibility. The basis for this argument is that the ex parte order, which both sides stipulated had not been signed by a judge of competent jurisdiction, but only approved by the district attorney's office and stamped by a court clerk, is not a legal writ, as the statute requires, rendering illegal the transfer it authorized. Appellant further argues that his (re)arrest was without probable cause since only information concerning the rape augmented police evidence already available at the first (inconclusive) interrogation. This argument, too, is bottomed, somewhat unsteadily, on the invalidity of the bring-down. Appellant seems to be equating his physical removal from one place to the other with his arrest, and ascribing to the former, as necessary, the evidentiary underpinnings of the latter. The third step in the construct is that the confession was involuntary because appellant was denied assistance of counsel.

The suppression judge propounded the paradox that although the customary bring-down procedure for transferring detainees was, besides being a clear violation of the

**2.** § 1887. Removal of prisoner by illegal process

Any person being committed to any prison, or in custody of any officer, sheriff, jailer, keeper or other person, or his under officer or deputy, for any criminal or supposed criminal matter, shall not be removed from the said prison or custody, into any other prison or custody, unles it be by habeas corpus or some other legal writ, or where the prisoner is delivered to the constable or other inferior officer, to be carried to some common jail, or where any person is sent by any judge or justice, having proper authority, to some common workhouse or house of correction, or where the prisoner is removed from one place to another within the same county, in order to his or her trial or discharge in due course of law, or in case of sudden fire or infection or other necessity; and if any person or persons shall, after such commitment as aforesaid, make out, sign, countersign and issue any warrant or warrants for such removal, except as before excepted, then he or they shall forfeit to the prisoner or party grieved two hundred pounds, to be recovered by the prisoner or party grieved, in manner aforesaid.[1] 1785, Feb. 18, 2 Sm.L. 275, § 12.

[1] Section 1883 of this title.

statute, "frought (sic) with the potential for constitutional and statutory violations" (Slip Op. of 6–9–77 at 3), requiring some remedial action in the form of a Rule of Criminal Procedure, no constitutional violation had occurred because the statute violated was a civil one, with concommittant civil penalty. In addition, the court found that because there was probable cause to arrest, custody under the bring-down order was valid, and that because the interrogation was for a crime not yet charged, i.e., the homicide, it was not a critical stage in the prosecution of that crime requiring the presence of counsel. It was further concluded that appellant was in any event aware of his right to counsel and had waived it. As a coda, it is pointed out that the Public Defender Association in Philadelphia, appellant's counsel for the rape charges, does not represent homicide defendants.[3]

Although the court's assessment of the bring-down procedure is sound, the use made of it in formulating a resolution in this case, provided no direction for future use. The familiarity of long usage does not alter the fundamental illegality of the procedure; whether it is civilly or criminally so is irrelevant, since no penalty of any kind was imposed upon the violator(s).

We begin our analysis with the assumption that bring-down orders[4] are proper, if and when executed with the judicial niceties observed, *Commonwealth v. Broaddus*, 458 Pa. 261, 342 A.2d 746 (1974). "There is nothing sinister or secretive about this procedure and it is a practice commonly used, not only in Philadelphia County, but in other counties of the Commonwealth." *Broaddus, supra; Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962). However, in both *Dickerson* and *Broaddus* an actual Order was involved, representing permission sought from and granted by a court aware of the objective sought. In

---

3. We fail to see the relevance of this since presumably appointed counsel could be made available.

4. "Bring-down" and "bring-up" are interchangable terms in the context.

*Commonwealth v. Trunk*, 311 Pa. 555, 167 A. 333 (1933), our Supreme Court declined to determine the presence or otherwise of legal warrant in a letter from the district attorney to the warden of the prison, requesting a defendant's release to the custody of police officers for purposes of interrogation. However, even in *Trunk* the Court found, without defining it, that there is a proper way of taking an accused from jail in order to exercise what was termed the right of the district attorney and investigating officers to interview him. The operative term, however, with respect to lawful execution of the procedure, is 'Order', that is, the judicial writ required by the statute.

The definition of writ (legal being a redundancy) as it appears in Black's Law Dictionary offers no surprises:

**Writ.** An order issued from a court requiring the performance of a specified act, or giving authority to have it done. A precept in writing, issuing from a court of justice, addressed to a sheriff or other officer of the law, or directly to the person whose action the court desires to command, either as the commencement of a suit or other proceeding or as incidental to its progress, and requiring the performance of a specified act, or giving authority and commission to have it done.

It is clear that the document utilized in this case, a form initialed by the district attorney, and stamped by a clerk, is an unsatisfactory substitute for an "order issued from a court," habituation notwithstanding.

While it is true that court approval may in some, if not most, instances amount only to a formality, dispensing with it nonetheless encroaches not only upon the court's prerogatives but upon the detainee's constitutional rights. As Justice Manderino points out in his dissent from the (legally proper) ex parte Order in *Broaddus,*

"An accused (a citizen presumed innocent) is entitled, under the fourth amendment to the Federal Constitution, and Article I, section 8, of the Pennsylvania Constitution, to be *secure in his person* ... The first seizure of an accused (a citizen presumed innocent) pursuant to proba-

ble cause supports incarceration. It does not support successive arbitrary seizures shuffling an accused (a citizen presumed innocent) from place to place." *Id.* 458 Pa. at 275, 342 A.2d 753, 754. (Emphasis and parentheses in original.)

It is unquestionable that such cavalier treatment by adversarial authorities without the knowledge of the court is an invasion of rights which demands redress in appellant's case, albeit not that requested, and for future detainees, prophylaxis. The question of remedy remains, and is dependent upon resolution of appellant's other averments of error in regard to his confession. These present very little challenge.

■ The addition of information concerning the alleged rape was quite sufficient to supply police with probable cause to arrest appellant for the murder. And, although the suppression judge erred in determining that appellant's interrogation was not a critical stage in the prosecution of the homicide, he was correct in finding that appellant had waived the presence of counsel. The absence of merit in these issues is a determinative factor in the process of fashioning an antidote to the clear statutory violation.

■ Appellant has alleged no prejudice from the bring-down itself. Such claims as he makes are directed toward the physical fact of the bring-down as a sort of "proximate cause" of the harm occasioned by the interrogation which followed. Because we have found probable cause in the arrest, and no violation of the right to counsel, we cannot therefore ascribe to the ex parte action such injury as to warrant suppression of the statement, or indeed to impose its condition precedent, a new trial marked by the absence of the statement. We see no reason why the civil penalty prescribed by the statute cannot be fashioned in such a way as to serve as a deterrent to future violations by the authorities involved, as appears to be the legislative intent.

■ Henceforth, given the absence of statute or rules to afford relief, bring-downs must, to safeguard the constitu-

tional rights of pre-trial detainees, be by court order. Continued abuse most assuredly will result in more definitive sanctions.

Judgment of sentence affirmed.